UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        v.                              )
                                        )        Criminal No. 05-0151 (PLF)
TIMOTHY D. NAEGELE,                     )
                                        )
        Defendant.                      )
_____)

OPINION

        This matter is before the Court on defendant's motions to dismiss Counts 1

through 4, 9 and 10 of the indictment, and on defendant's motion to strike a portion of Count 11.

Argument was heard on the motions on April 12, 2006.  Upon consideration of the arguments of

the parties, as stated in their briefs and in open court, the Court grants defendant's motions to

dismiss Counts 1, 2, 3 and 9, denies defendant's motions to dismiss Counts 4 and 10, and denies

defendant's motion to strike.

I.  BACKGROUND

        Defendant Timothy Naegele is an attorney licensed to practice law in California

and the District of Columbia.  Naegele owns his own law firm as a sole proprietorship.  On or

about March 29, 2000, Naegele filed a Chapter 7 petition for personal bankruptcy in the United

States Bankruptcy Court for the District of Columbia.  See In re Naegele, Case No. 00-0601

(Bankr. D.C. 2000).  On May 4, 2000, as required by the Bankruptcy Code, he filed a Statement

of Financial Affairs ("SFA") and several Bankruptcy Schedules, and signed each as true and

correct under penalty of perjury.

Pursuant to 11 U.S.C. § 341, on May 23, 2000, the bankruptcy trustee conducted a creditors' meeting at which defendant was questioned under oath by the trustee and several creditors about the information provided in his SFA and Bankruptcy Schedules, and about his financial situation in general.  On September 5, 2000, the Bankruptcy Court granted defendant a discharge from bankruptcy under 11 U.S.C. § 727.  The bankruptcy case was closed on September 20, 2000.  On April 28, 2005, a federal grand jury returned an indictment against Mr. Naegele, alleging that he had made numerous misstatements on his SFA and Bankruptcy Schedules and in the creditors' meeting, and charging him with ten counts of making false statements under 18 U.S.C. § 152 and one count of bankruptcy fraud under 18 U.S.C. § 157.

18 U.S.C. § 152 ("Concealment of assets; false oaths and claims; bribery") reads, in relevant part:

> A person who . . . (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; [or] (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11; . . . shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 157 ("Bankruptcy fraud") provides that:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so–
>
> (1) files a petition under title 11, including a fraudulent involuntary bankruptcy petition under section 303 of such title;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time

> before or after the filing of the petition, or in relation to a
> proceeding falsely asserted to be pending under such title,
>
> shall be fined under this title, imprisoned not more than 5 years, or
> both.

Counts 1 through 3 of the indictment pertain to alleged misstatements on defendant's Statement of Financial Affairs.  Item 1 of the SFA form calls for a bankruptcy petitioner to state "the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this [bankruptcy] case was commenced," as well as "the gross amounts received during the two years immediately preceding the calendar year."  Ex. A to Defendant Timothy D. Naegele's Motion to Dismiss Counts 1-4 of the Indictment ("Pretrial Mot. No. 1").

The indictment alleges that defendant, rather than stating the gross income of his law practice on the SFA, stated his gross income minus expenses – in effect, the net income of his law practice.  More specifically, each of Counts 1 through 3 charges defendant with making a material false statement on Item 1 of the SFA in language typified by the language of Count 1, which characterizes the falsity as follows:  "That the gross amount of income from his law practice in the year 2000 to the date of the filing of the bankruptcy petition was $16,632.48 when, in truth and in fact as he [defendant] then well knew, the gross income from his law practice was at least $50,500 for that period."  Indictment ¶ 9.[1]  According to the indictment, each of these alleged misstatements constituted a violation of 18 U.S.C. § 152(3).  Defendant has moved to

---

[1]      The amounts stated by defendant in response to Item 1 of the SFA for the years 2000, 1999, and 1998 were $16,632.48, $25,871.85, and $3,830.52, respectively.  The government alleges that the actual gross income of defendant's law practice for those years was at least $50,500, $120,600, and $81,750, respectively.

dismiss these Counts on the ground that Item 1 of the SFA was "fundamentally ambiguous" as to what information it called for, and that defendant's responses therefore cannot support a charge of perjury under United States v. Lattimore, 127 F. Supp. 405, 413 (D.D.C.), *aff'd* 232 F.2d 334 (D.C. Cir. 1955), and other cases.[2]

Count 4 pertains to an alleged misstatement by defendant on one of the Bankruptcy Schedules filed in support of his petition. On Bankruptcy Schedule I, Naegele reported a monthly "[r]egular income from operation of business or profession" of $3,500, and consequently (because he reported no other sources of income) a "total combined monthly income" of $3,500. See Ex. B to Pretrial Mot. No. 1. According to the indictment, Naegele's actual average monthly income was at least $16,850 in the year 2000 and at least $10,000 in 1999. See Indictment ¶ 9. Defendant moves to dismiss Count 4 on the ground that the section of Schedule I in response to which the alleged misstatement was made also was "fundamentally ambiguous" and thus insufficient to support a perjury charge.

Counts 9 and 10 of the indictment charge defendant with falsely testifying under oath at his May 23, 2000 creditors' meeting, in violation of 18 U.S.C. § 152(2). Count 9 states that defendant "[f]alsely testif[ied] under oath that his law practice 'just went down to nothing' when, in truth and in fact as he then well knew, he had obtained clients which had paid him substantial legal fees in the months leading up to the creditors' meeting and which he anticipated

---

[2]     Defendant claims, and the government appears to agree, that 18 U.S.C. § 152 is "clearly a 'perjury statute.'" See Pretrial Mot. No. 1 at 4-5 n.1. Although there are relatively few cases interpreting the bankruptcy fraud statutes, which were enacted in 1994, there is authority to support the application of the "fundamental ambiguity" standard to charges of making false statements in a bankruptcy petition. See United States v. Bussell, 414 F.3d 1048, 1051 (9th Cir. 2005).

would result in continued substantial increases in income from his law practice."  See Indictment ¶ 11.  Count 10 states that defendant "[f]alsely testif[ied] under oath that he had only rental vehicles when, in truth and in fact as he then well knew, he possessed a model year 2000 Chevrolet Malibu which he had acquired on or about April 17, 2000."  Id.  Defendant has moved to dismiss both of these counts on the ground that his alleged misstatements, even if misleading, were in fact "literally true" and thus insufficient to support perjury charges under Bronston v. United States, 409 U.S. 352, 362 (1973), and its progeny.

Finally, Count 11 of the indictment charges the defendant with bankruptcy fraud under 18 U.S.C. § 157, alleging that he developed a scheme to defraud the bankruptcy court and his creditors by concealing the value of his law practice and other assets.  Specifically, the indictment charges that Naegele fraudulently concealed the existence of "clients who had paid and were obligated to pay what [defendant] anticipated would be substantial legal fees" in cases pending at the time of the bankruptcy.  Indictment ¶ 14.  The indictment alleges that the defendant used the following manner and means in perpetrating the fraud scheme:  (1) filing a Chapter 7 petition materially understating the value of his assets; (2) filing a materially false SFA and false bankruptcy schedules; (3) providing misleading testimony under oath at the creditors' meeting; and (4) preparing legal bills for his clients in such a way as to conceal the existence of these clients from the bankruptcy court and defendant's creditors.  See id. ¶ 15.

Defendant has moved to strike as prejudicial surplusage Section 11(B)(c) of the indictment (part of Count 11), which contains allegations regarding defendant's preparation of legal bills, on the ground that it constitutes an allegation of "other crimes, wrongs or acts" the admissibility of which must be determined under Rule 404(b) of the Federal Rules of Evidence,

because it alleges behavior not specifically proscribed by 18 U.S.C. § 157(1), (2), or (3).[3]

Defendant further argues that the allegation in Section 11(B)(c) is prejudicial and should be

stricken from the indictment.

## II.  DISCUSSION

### A.  Motion to Dismiss:  "Fundamental Ambiguity"

Defendant's motions to dismiss assert two defenses:  First, with respect to Counts

1 through 4, defendant argues that the questions on the SFA and Bankruptcy Schedule to which

defendant allegedly gave false answers were "fundamentally ambiguous."  Second, with respect

to Counts 9 and 10, he argues that his alleged misstatements were literally true and thus cannot

form the basis for conviction on the charged crimes.

### 1. "Fundamental ambiguity" defense to perjury

"Perjury requires that a witness believe that the testimony he gives is false.  Thus,

whether the witness believes that an answer is true or false generally turns on the declarant's

understanding of the question."  United States v. Lighte, 782 F.2d 367, 372 (2d Cir. 1986); see

also United States v. Culliton, 328 F.3d 1074, 1080 (9th Cir. 2003) (perjury conviction requires

that the defendant believe that the testimony he gives is false).  Consequently, a defendant cannot

as a matter of law be convicted of perjury on the basis of an answer to a question that is

"excessively vague" or "fundamentally ambiguous."  United States v. Culliton, 328 F.3d at 1078;

---

[3]        Although defendant's motion with respect to Count 11 is captioned a "Motion to Dismiss Count 11(b)(C) or in the Alternative to Strike as Prejudicial Surplusage," the government points out (and defendant conceded at oral argument) that Section 11(B)(c) of the indictment does not set forth a separate count, and therefore is not properly subject to a motion to dismiss.

see also United States v. Camper, 384 F.3d 1073, 1076 (9th Cir. 2004) ("A fundamentally

ambiguous statement cannot, as a matter of law, support a perjury conviction."); United States v.

Lighte, 782 F.2d at 375; United States v. Lattimore, 127 F. Supp. at 413.

A question is "fundamentally ambiguous" when it "is not a phrase with a meaning

about which men of ordinary intellect could agree, nor one which could be used with mutual

understanding by a questioner and answerer unless it were defined at the time it were sought and

offered as testimony." United States v. Lattimore, 127 F. Supp. at 410; see also United States v.

Lighte, 782 F.2d at 375.  With regard to statements made before a grand jury, the D.C. Circuit

has stated that a question is fundamentally ambiguous if, "[w]hen the questions involved . . . are

considered in the context of both the purpose of the grand jury investigation, . . . and the series of

questions actually asked," "the words involved could not be 'subject to a reasonable and definite

interpretation by the jury.'" United States v. Chapin, 515 F.2d 1274, 1280 (D.C. Cir. 1975).  The

Third Circuit has put it this way:  "[A] question is 'not amenable to jury interpretation . . . when

it is entirely unreasonable to expect that the defendant understood the question posed to him[.]'"

United States v. Serafini, 167 F.3d 812, 820 (3d Cir. 1999) (quoting United States v. Ryan, 828

F.2d 1010, 1015 (3d Cir. 1987)).  The inquiry is fact-specific, and some courts have

acknowledged that "the phrase 'fundamentally ambiguous' has itself proven to be 'fundamentally

ambiguous.'" United States v. Landau, 737 F. Supp. 778, 781 (S.D.N.Y. 1990).

Fundamental ambiguity, however, is something more than "mere vagueness or

ambiguity." United States v. Chapin, 515 F.2d at 1279.  "[A] question is not fundamentally

ambiguous simply because the questioner and respondent might have different interpretations."

United States v. Culliton, 328 F.3d at 1078.  Even if a question is open to multiple

interpretations, if it is not <u>fundamentally</u> ambiguous "the question of what a defendant meant

when he made his representation will normally be one for the jury."  <u>United States v. Landau</u>,

737 F. Supp at 781, 784 (quoting <u>United States v. Diogo</u>, 320 F.2d 898, 907 (2d Cir. 1963)); <u>see</u>

<u>also</u> <u>United States v. Camper</u>, 384 F.3d at 1076 ("the existence of 'some ambiguity' in a falsely

answered question is generally not inconsistent with a conviction for perjury"); <u>United States v.</u>

<u>Serafini</u>, 167 F.3d at 820 ("in instances of some ambiguity as to the meaning of a question, 'it is

for the petit jury to decide which construction the defendant placed on the question.'") (quoting

<u>United States v. Ryan</u>, 828 F.2d at 1015); <u>United States v. Farmer</u>, 137 F.3d 1265, 1269 (10th

Cir. 1998) ("where a prosecutor's question is only 'arguably ambiguous,' a defendant's

understanding of the question is for the jury to resolve in the first instance.").

In determining whether a question is so vague as to be fundamentally ambiguous,

the Court may not consider the question in isolation, <u>see</u> <u>United States v. Lighte</u>, 782 F.2d at 375,

but must look to the context of the question and the answer, "as well as other extrinsic evidence

relevant to [the defendant's] understanding of the questions posed[.]"  <u>United States v. Culliton</u>,

328 F.3d at 1079; <u>see also</u> <u>United States v. Serafini</u>, 167 F.3d at 820 (quoting <u>Fotie v. United</u>

<u>States</u>, 137 F.2d 831, 842 (8th Cir. 1943) ("'[a] charge of perjury may not be sustained by the

device of lifting a statement of the accused out of its immediate context and thus giving it a

meaning wholly different than that which its context clearly shows.'"); <u>United States v. Farmer</u>,

137 F.3d at 1269 ("A defendant may not succeed on a claim of fundamental ambiguity by

isolating a question from its context in an attempt to give it a meaning entirely different from that

which it has when considered in light of the testimony as a whole.").

2.  Motion to dismiss Counts 1 through 4 (Pretrial Motion No. 1)

Counts 1, 2, and 3 allege that the defendant misstated his "gross income" on the

SFA for the years 2000, 1999, and 1998.  Item 1 of the SFA form (entitled "Income from

Employment of Operation of Business") directs the bankruptcy petitioner to do the following:

> State the gross amount of income the debtor has received from
> employment, trade, or profession, or from operation of the debtor's
> business from the beginning of this calendar year to the date this
> [bankruptcy] case was commenced.  State also the gross amounts
> received during the two years immediately preceding the calendar
> year.

Ex. A to Pretrial Mot. No. 1.

Defendant argues that this instruction is "fundamentally ambiguous" because it

"readily lends itself to the interpretation that it means income defendant actually received from

defendant's sole proprietorship," which is what the defendant reported on the form.  Pretrial Mot.

No. 1 at 7 (emphasis in original).  According to the defendant, "[i]t was reasonable for an

individual filing for Chapter 7 relief to have understood the instruction to list the 'gross amount

of income' he 'has received' as requiring him to list his 'business income'.  That is to say, the

gross income he derived from the operation of his business – revenues less expenses."  Pretrial

Mot. No. 1 at 11.  In other words, the "gross amount of income" he received from the operation

of his business is what he as an individual received, or what was left after the expenses of

running the business were paid.

The Court agrees that, in the context of defendant's Chapter 7 personal

bankruptcy proceeding, Item 1 of the SFA was "fundamentally ambiguous," and that defendant's

allegedly false responses therefore are insufficient to support criminal charges under 18 U.S.C.

9

§ 153(3).  Item 1 calls upon a bankruptcy petitioner to state "the gross amount of income <u>the</u> <u>debtor</u> has received . . . <u>from</u> operation of the debtor's business[.]"  Ex. A to Pretrial Mot. No. 1 (emphasis added).  It does not ask for the gross income <u>the business</u> received, or the gross income "of" the business or "to" it.  Rather, the language of the question suggests that the debtor is, as defendant maintains, supposed to report his "take-home" income from the operation of his business.  Nothing on the form suggests a contrary interpretation, and the instructions that accompany it do not define the term "gross amount of income."[4]  It is unlikely that defendant could have understood that Item 1 on the SFA filed in support of his <u>personal</u> Chapter 7 bankruptcy petition called upon him to report the gross income <u>of</u> his law practice, rather than the gross amount of income the defendant derived personally <u>from</u> his law practice.  It was Naegele's insolvency, and not the insolvency of his law firm, that was at issue in his bankruptcy.

The government argues that the law firm's gross receipts are the proper measure of Naegele's own gross income because "[i]n all respects, Naegele treated the law firm's income as his own."  United States' Consolidated Response in Opposition to Defendant's Motions to Dismiss Counts 1-4, 9, 10 and 11 of the Indictment and Motion for Bill of Particulars ("Opp.") at 2.  According to the government, Naegele's law firm was organized not as a corporation or a partnership but as a sole proprietorship, and Naegele's individual tax returns reported the gross income and expenses from the law practice.  Naegele did not pay himself a salary from the law firm, and he deposited funds received from clients into an account that he used to pay his own day-to-day living expenses.  <u>See</u> <u>id</u>.  These facts, however, do not establish an identity between the defendant and his law firm for purposes of his personal bankruptcy proceeding, especially

---

[4]        The instructions on the SFA define only the terms "in business" and "insider."

where Naegele's withdrawals from his account for personal use could be distinguished from his withdrawals to pay business expenses on the basis of financial records.

Nor does the fact that Naegele reported information about the gross income and expenses of his law practice on his personal income tax return establish such an identity. Form 1040, Schedule C of the federal income tax forms ("Profit or Loss from Business") calls for information about the gross receipts and expenses of his business, and it likely would have been improper for defendant <u>not</u> to have reported that information on his personal income tax. In any event, the "Business income or (loss)" defendant reported on Line 12 of his Form 1040 for the year 1999 – $25,872 – is consistent with the "the gross amount of income" received "from operation of the debtor's business" that defendant reported for the year 1999 on his SFA. <u>See</u> Ex. F to Pretrial Mot. No. 1.

Not only was it reasonable in this context for the defendant to infer that the SFA called for him to report only the income "actually received from" his business; it would be "entirely unreasonable" to expect the defendant to have arrived at the government's suggested understanding of the phrase "gross amount of income the debtor has received . . . from operation of the debtor's business." <u>United States v. Serafini</u>, 167 F.3d at 820. The Court finds that in these circumstances Item 1 of the SFA was "fundamentally ambiguous," and therefore will dismiss Counts 1 through 3.

In contrast, Bankruptcy Schedule I, defendant's answer to which is at issue in Count 4, is not "fundamentally ambiguous." Schedule I calls upon the debtor to report, under the rubric of "Total Monthly Income," his "Regular income from operation of business or profession." <u>See</u> Ex. B to Pretrial Mot. No. 1. As he did on his SFA, Naegele reported on

Schedule I the net income from his law firm, rather than the firm's gross income.  Defendant argues, as he does with respect to Item 1 of the SFA, that this element of Schedule I is fundamentally ambiguous because "a logical interpretation of the term 'Total Monthly Income' for a sole proprietor would be to reduce the gross receipts, or revenue of the business, by the business's expenses in order to determine the actual amount of 'income' the proprietor retains from the 'operation of business.'"  Pretrial Mot. No. 1 at 12-13.  In other words, Naegele again argues that the form was "fundamentally ambiguous" as to whether it called for a statement of his law firm's gross income or his net income from it.

Schedule I differs from the SFA, however, in one important respect.  As discussed above, nothing on the SFA form itself or the context in which it was filed served to resolve the ambiguity in Item 1 or to suggest that the government's interpretation of that question was the correct one.  The same cannot be said of Schedule I.  Along with Schedule I, which calls for details of the current income of an individual debtor, Naegele was required to file Bankruptcy Schedule J, which calls for the debtor's current expenditures.  <u>See</u> 11 U.S.C. § 521(a)(1)(B)(ii).  The two forms must be read in conjunction.  Schedule I calls for the debtor's "Regular income from operation of business or profession."  Schedule J calls for the debtor's "Regular <u>expenses</u> from operation of business, profession, or farm."  Ex. E to Pretrial Mot. No. 1 (emphasis added).

When read together, the two schedules call upon the debtor to report the gross monthly income from the operation of his business on Schedule I and then the monthly expenses from the operation of his business on Schedule J, from which figures the trustee or a creditor could calculate the debtor's net income.  While there may be some ambiguity when one looks at Schedule I in isolation, it would, at the very least, be quite unusual for Schedules I and J to seek a

statement of expenses in conjunction with a statement of <u>net</u>, rather than gross, income.[5]

Defendant appears to have understood this fact in filling out his bankruptcy schedules, as he

entered "0.00" in the relevant space on Schedule J, despite the fact that, at least according to his

tax returns for 1999, his monthly business expenses were considerable.[6]

   This is not to say that Schedule I could not be interpreted as defendant suggests –

merely that the form is only "arguably ambiguous," and that any ambiguity on the form is not

"fundamental."  <u>United States v. Farmer</u>, 137 F.3d at 1269 ("Fundamental ambiguity is the

exception, not the rule.").  It is thus "for the jury to resolve in the first instance."  <u>Id.</u>; <u>see</u> <u>United</u>

<u>States v. Landau</u>, 737 F. Supp at 781, 784 (quoting <u>United States v. Lighte</u>, 782 F.2d at 375)

("Absent fundamental ambiguity, 'the question of what a defendant meant when he made his

representation will normally be for the jury.'").  In effect, Schedule J provides additional context

and further information from which a jury might arrive at a "reasonable and definite

interpretation" of Schedule I.  <u>United States v. Chapin</u>, 515 F.2d at 1280.  Schedule I therefore is

not fundamentally ambiguous, and the Court denies defendant's motion to dismiss Count 4.

Defendant is not foreclosed from arguing that he understood the form to call for a statement of

his net income, but this is an argument for the jury, not for the Court.  <u>See</u> <u>United States v.</u>

---

   [5] Even defendant's proffered expert, Robert R. Weed, Esq., who testified at the motions hearing, indicated that it would be his practice to record on Schedule I the gross income of the business (which differs from the individual debtor's "gross income"), and on Schedule J the expenses of the business.  Weed suggested that by subtracting such expenses from such business income, a creditor or trustee could calculate the gross amount of income to the debtor from the business.

   [6] The upshot of defendant's having reported no monthly business expenses is that a calculation of defendant's monthly net business income based on the forms as submitted would yield the same figure – $3500 – as a calculation based on an accurate statement of defendant's gross business income and business expenses.

Camper, 384 F.3d at 1076; United States v. Farmer, 137 F.3d at 1269 ("where a prosecutor's

question is only 'arguably ambiguous,' a defendant's understanding of the question is for the jury

to resolve in the first instance.").

### B.  Motions to Dismiss: "Literal Truth"

#### 1. Bronston defense to perjury

The Supreme Court held in Bronston v. United States, 409 U.S. at 360, that "the

perjury statute is not to be loosely construed, nor the statute invoked simply because a wily

witness succeeds in derailing the questioner – so long as the witness speaks the literal truth."

Accordingly, a perjury conviction cannot proceed on the basis of statement by a defendant that is

literally true, even if it is "incomplete, intentionally misleading or 'misleading by negative

implication.'" In re Grand Jury Proceedings, 117 F. Supp. 2d 6, 31 (D.D.C. 2000) (quoting

Bronston v. United States, 409 U.S. at 353, 359-60).  Cases from other circuits have limited the

defense to situations where the defendant's statement was "literally true under the only possible

interpretation" – that is, where "the statement is indisputably true, though misleading because it

was unresponsive to the question asked."  United States v. Camper, 384 F.3d at 1075-76.

Bronston also makes clear that in the context of perjury charges based on

adversarial questioning, it is not the declarant's burden to provide candid answers:  "It is the

responsibility of the [questioning] lawyer to probe. . . . If a witness evades, it is the lawyer's

responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the

whole truth with the tools of adversary examination."  Bronston v. United States, 409 U.S. at

358-59; see also United States v. Ruedlinger, 990 F. Supp. 1295, 1303 (D. Kan. 1997); United

States v. Spalliero, 602 F. Supp. 417, 422 (C.D. Cal. 1984) ("The law requires the witness to tell the truth; it does not shoulder the witness with the burden of aiding a sloppy questioner.").

### 2.  Motion to Dismiss Count 9 (Pretrial Motion No. 2)

Count 9 alleges that Naegele falsely testified at the creditors' meeting "that his law practice 'just went down to nothing' when, in truth and in fact as he then well knew, he had obtained clients which had paid him substantial legal fees in the months leading up to the creditors' meeting and which he anticipated would result in continued substantial increases in income from his law practice."  See Indictment ¶ 11.  Defendant moves to dismiss Count 9 both because his statement was literally true (under Bronston), and because the question asked was fundamentally ambiguous.

Mr. Naegele made this statement at the creditors' meeting in response to the questioning of Steve Paleos, a representative of First American Title Insurance Company, one of defendant's creditors.  See Defendant Timothy D. Naegele's Motion to Dismiss Count 9 of the Indictment ("Pretrial Mot. No. 2") at 2.[7]  Defendant contends that he made the alleged misstatement in the context of a discussion about his 1990 declaration of his Chapter 11

_____

[7]  There is no "official" transcript of the creditors' meeting.  Pursuant to Rule 2003(c) of the Federal Rules of Bankruptcy Procedure, which requires the creditors' meeting to be "recorded verbatim by the United States trustee using electronic sound recording equipment or other means of recording," the meeting was recorded on audio tape.  The tape recording was enhanced at the FBI's audio lab, and on the basis of this recording the government and the defendant each produced its own draft transcript, portions of which were filed along with the pretrial motions and briefs.  After the motions hearing, the parties separately filed complete draft transcripts, along with a copy of the enhanced recording on CD-ROM.

While the government's version of the transcript states that "Steve Paleos" was the representative of First American Title Insurance Company, defendant's version of the transcript records this individual's name as "Steve Hailey."

15

bankruptcy, and the factors that contributed to Naegele's financial difficulties in the time leading up to <u>that</u> declaration – not his 2000 Chapter 7 bankruptcy petition.  <u>See id.</u> at 2-3, 7.  In that context, defendant argues, his statement was literally true, if misleading – there is no suggestion that defendant's law practice did <u>not</u> "go down to nothing" during the time before his 1990 Chapter 11 petition – and thus under <u>Bronston</u> cannot support a perjury conviction.  In the alternative, defendant argues, the question asked by Mr. Paleos – "What was the precipitating event for your financial difficulty?" – was fundamentally ambiguous as to which time period it referenced.

The government responds that it was clear from the context of the exchange that Paleos was inquiring about Naegele's 2000 (Chapter 7) bankruptcy, and that the discussion of Naegele's earlier financial difficulties had occurred much earlier in the creditors' meeting and therefore is irrelevant.  <u>See</u> Opp. at 8-10.  The government further argues that it would make little sense for Mr. Paleos, who had been present for the earlier questioning about defendant's 1990 bankruptcy, to recapitulate during his short time allotment the discussion about Naegele's old financial difficulties, which were irrelevant to the 2000 bankruptcy.  <u>See id.</u>  Finally, the government argues that the discussion with Paleos came immediately after questioning by another creditor regarding the <u>current</u> status of Naegele's law practice.  <u>See id.</u> at 9-10.

A review of the transcript of the creditors' meeting, however, severely undermines the government's arguments.  As recorded in the government's version of the transcript of the creditors' meeting, the entire exchange, from the start of Paleos's questioning to the end of the discussion of Naegele's financial difficulties, is as follows:

MR. PALEOS:  Ah, forgive me if I, this is Steve Paleos for First American Title Insurance Company.
Forgive me if I duplicate any of the questions. Um. What was the um, precipitating event for ah, your financial difficulties?

DEFENDANT:  It was basically two things. Ah, ah, one I, I had ah, ah, ah, was in the process of developing a ah, ah, two unit condominium, ah, ah, on the, on the beach in Malibu, California, and basically, ah, ah, it was just ah, a case of cost overruns. Basically, what happened was that the cost kept escalating and frankly, ah, I was putting in money, the lender was putting in money, and at some point the lender said no more and I said no more.

MR. PALEOS:  When was that?

DEFENDANT:  Ah, it was ah, prior to the time when I filed for ah, Chapter 11.

MR. PALEOS:  And is, is that what precipitated the 11, the ah, Chapter 11, your personal Chapter 11?

DEFENDANT:  Ah, essentially yes. We tried to save the company through Chapter 11.

MR. PALEOS:  What, what was the other ah, factor?

DEFENDANT:  The other factor was that ah, I had lost ah, my biggest client ah, in Washington ah, and basically ah, I thought the ah, our law practice went down to nothing, and ah, and frankly the people that worked for me ah, went out to other places to work.

MR. PALEOS:  Okay. Ah, do you have a current passport?

Government's Draft Transcript at 40-41.[8]

Based on this exchange, it is clear that defendant's response to Paleos's question was "literally true," and thus insufficient to support a perjury charge under <u>Bronston</u>.  Although it

---

[8]     Aside from the disagreement as to Mr. Paleos's last name, there is no relevant difference between the government's and the defendant's versions of the transcript with respect to this exchange.

may not have been Paleos's intention to do so, he posited his question in the context of a discussion about defendant's 1990 Chapter 11 bankruptcy proceeding, not his 2000 Chapter 7 bankruptcy.

Although the previous creditor had asked Naegele about his recent financial difficulties, contrary to the government's argument, he did in fact focus on defendant's earlier Chapter 11 bankruptcy towards the end of his questioning. See Government's Draft Transcript at 39. Moreover, Paleos's initial statement asking defendant to "forgive me if I . . . duplicate any of the questions" suggests that Paleos was prepared to recapitulate earlier discussions, or at least to break with the immediately preceding line of questioning. Paleos then asked defendant to define the relevant time period ("MR. PALEOS: When was that?"), which defendant did by adverting to his 1990 Chapter 11 petition. Paleos then asked specifically: "[I]s that what precipitated . . . your personal Chapter 11?" – to which Naegele offered a true answer.

Even if Naegele had intentionally steered Paleos off course and given a misleading answer, he cannot be convicted of perjury on this basis. "In the face of evasion or misleading answers, it is the lawyer's duty 'to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.'" United States v. Ruedlinger, 990 F. Supp. at 1303 (quoting Bronston v. United States, 409 U.S. at 358-59). "Bronston stands for the proposition that 'precise questioning is imperative as a predicate for the offense of perjury.'" United States v. Serafini, 167 F.3d at 823 (quoting Bronston v. United States, 409 U.S. at 362).

3.   Motion to Dismiss Count 10 (Pretrial Motion No. 3)

Count 10 alleges that Naegele falsely testified at the creditors' meeting "that he had only rental vehicles when, in truth and in fact as he then well knew, he possessed a model year 2000 Chevrolet Malibu which he had acquired on or about April 17, 2000."  See Indictment ¶ 11.  According to the government, the Malibu had been purchased for Naegele by a client in exchange for a reduction in her legal fees, and Naegele owned it free and clear.  See Opp. at 7-8.[9]

Jeffrey Mervis, a representative of one of defendant's creditors, asked defendant whether he had a car in an exchange recorded in the government's version of the transcript as follows:[10]

> MR. MERVIS:  Do you have a car sir?
>
> DEFENDANT:  No.  Ah, I've, I've been renting a car from National Car (UI).
>
> MR. MERVIS:  In Florida and LA and here or?
>
> DEFENDANT:  In LA primarily.  Ah, here, here, ah, ah, when I'm in Washington I often use the Metro.
>
> MR. MERVIS:  Do you know what your, your automobile rental payments are?
>
> DEFENDANT:  They've been running about a thousand a month.

Goverment's Draft Transcript at 7.  According to defendant's transcription of the meeting, defendant did not answer "no" when asked if he had a car; he responded only that he had "been

---

[9]      Naegele did not list the car as an asset in his bankruptcy petition, SFA, or Bankruptcy Schedules, which he filed before he acquired the car.  The government does not allege that this was improper, or that Naegele had any duty to amend his filings after receiving the car.

[10]      The defendant's draft transcript refers to this individual as "Jeff Murvis."

renting a car from National Car."  In that case, defendant argues, his response would have been

misleading but literally true, because he <u>had</u> in fact been renting a car in addition to owning the

one referred to in the indictment.  <u>See</u> Defendant's Draft Transcript at 7.

   The Court has reviewed the audio recording of the creditors' meeting and, on

close listening, finds it at least arguable that defendant did answer "no" to Mervis's question

before going on to state that he had been renting a car.  Defendant's motion thus raises a factual

question for the jury to decide after it hears the audio tape, not one appropriate for resolution now

by the Court.  Assuming, then, as the indictment alleges, that defendant denied having a car in

the meeting, his response to Mervis's question was <u>not</u> literally true, because defendant did have

a car when the question was asked.

   Defendant argues, in the alternative, that even if he did answer "no" to Mervis's

question, his response was literally true because the car was registered not in Naegele's name but

in the name of a trust naming defendant's children as beneficiaries.  <u>See</u> Defendant Timothy D.

Naegele's Consolidated Reply to the Government's Opposition to Motions to Dismiss Counts

Nine and Ten of the Indictment at 6-7 (citing <u>United States v. Stauch</u>, 59 F.3d 177 (Table), 1995

WL 377192, at *6 (9th Cir. 1995) (unpublished), for the proposition that "an asset held in trust

by a debtor for another is not property of the bankruptcy estate or the debtor").  This argument is

unconvincing.  Although defendant's response might be true under one (somewhat strained)

interpretation of the term "have," it is assuredly not the case that defendant's statement is

"literally true under the only possible interpretation," as is required for the <u>Bronston</u> defense.  <u>See</u>

<u>United States v. Camper</u>, 384 F.3d at 1075-76.  Defendant may put this argument to the jury in an

attempt to show that his statement was not knowingly and fraudulently false in violation of 18

U.S.C. § 152(3), but the Court will not dismiss Count 10 on this ground.  In the context of perjury prosecutions, "it is up to the jury to determine how the defendant construed the question or answer and to decide, in that light, whether the defendant knowingly gave a false answer." United States v. Milton, 8 F.3d 39, 46 (D.C. Cir. 1993).

   Defendant also argues that Count 10 should be dismissed because Mervis's question – "Do you have a car, sir?" – was fundamentally ambiguous.  Defendant asserts that a reasonable person "could interpret that question equally well as meaning (1) 'do you have a car here today?' or (2) 'do you own a car?' or (3) 'do you have use of a car, e.g., a rental car?'" Pretrial Mot No. 3 at 9.  Even if defendant is correct that some ambiguity exists, because of the unlikely possibility that a reasonable person might assume scenarios (1) or (3), any ambiguity is not so "fundamental" as to render Count 10 fatally deficient.  "Almost any question or answer can be interpreted in several ways when subjected to ingenious scrutiny after the fact," but "mere vagueness or ambiguity in the questions is not enough to establish a defense to perjury."  United States v. Chapin, 515 F.2d at 1279-80; see also United States v. Culliton, 328 F.3d at 1078 ("a question is not fundamentally ambiguous simply because the questioner and respondent might have different interpretations.").  When ambiguity is not fundamental, it is for the jury to resolve. See United States v. Serafini, 167 F.3d at 820 ("in instances of some ambiguity as to the meaning of a question, 'it is for the petit jury to decide which construction the defendant placed on the question.'") (quoting United States v. Ryan, 828 F.2d at 1015).  Accordingly, the Court denies the defendant's motion to dismiss Count 10 on this ground, as well.

### C.  Motion to Strike Section 11(B)(c)

Count 11 charges the defendant with bankruptcy fraud under 18 U.S.C. § 157. Defendant has moved to strike a portion of this Count, Section 11(B)(c) of the indictment, as prejudicial surplusage under Rule 7(d) of the Federal Rules of Civil Procedure.  Count 11, Section B of the indictment states that:

> Defendant Naegele executed and concealed the scheme to defraud, and attempted to do so, in the following manner and by using the following means, among others:
>
> a.  filing a Chapter 7 bankruptcy Petition that materially understated the value of his assets;
>
> b.  filing a Statement of Financial Affairs and Bankruptcy Schedules that contained materially false and misleading information about his clients, his income from his law practice, and his anticipated income from his law practice in the year after the filing of Bankruptcy Schedule I;
>
> c.  preparing and providing bills to clients of his law practice in a manner designed to help conceal the existence of the clients from the bankruptcy court and his creditors; and
>
> d.  providing materially false and misleading testimony at his creditors' meeting about the condition of his law practice, the location of his client files and the amount and sources of his income in order to conceal from his creditors and the bankruptcy court his income-producing clients and his true financial condition.

Indictment ¶ 15 (emphasis added).

Defendant argues that Section 11(B)(c) of the indictment "fails to state an offense" because – unlike the other subparts of Section 11(B) – it alleges behavior not specifically proscribed by 18 U.S.C. § 157(1), (2), or (3).[11]  Accordingly, defendant argues, it

---

[11]     Those subsections set forth specific conduct which, if carried out "for the purpose of executing or concealing" a "scheme or artifice to defraud," gives rise to criminal liability:

constitutes an allegation of "other crimes, wrongs or acts," the admissibility of which must be determined under Rule 404(b) of the Federal Rules of Evidence.  Defendant further argues that the allegation in Section 11(B)(c) is prejudicial to defendant and must be stricken from the indictment.

Rule 7(d) of the Federal Rules of Criminal Procedure provides:  "Upon the defendant's motion, the court may strike surplusage from the indictment or information."  FED. R. CRIM. P. 7(d).  The Court may strike statements from an indictment, however, only if they are both prejudicial and irrelevant.  See United States v. Hsia, 24 F. Supp. 2d 63, 65 (D.D.C. 1998) (citing United States v. Oakar, 111 F.3d 146, 157 (D.C. Cir. 1997)).  Relevant statements in an indictment "should not be stricken even if [they] may be prejudicial."  United States v. Hsia, 24 F. Supp. 2d at 65; see also United States v. Trie, 21 F. Supp. 2d 2, 29 (D.D.C. 1998) ("While the Court has authority under Rule 7(d) of the Federal Rules of Criminal Procedure to strike surplusage from an indictment, 'material that can fairly be described as surplus may only be stricken if it is irrelevant and prejudicial.'") (quoting United States v. Oakar, 111 F.3d at 157).

Defendant's argument is without merit, because it erroneously assumes that the only conduct relevant to determining whether a defendant has violated Section 157 is that set forth in subsections (1), (2), and (3) – that is, filing a petition or other document, or making a false representation in connection with a bankruptcy proceeding.  Another element of the offense, however, is that the defendant has "devised or intend[ed] to devise a scheme or artifice to defraud[.]"  18 U.S.C. § 157; see also United States v. Wagner, 382 F.2d 598, 612 (6th Cir.

---

(1) filing a bankruptcy petition, (2) filing a document in a bankruptcy proceeding, or (3) making a false representation "concerning or in relation to" a bankruptcy proceeding.  18 U.S.C. § 157.

2004) ("Section 157(1) . . . contains three elements: (1) the existence of a scheme to defraud or

intent to later formulate a scheme to defraud and (2) the filing of a bankruptcy petition (3) for the

purpose of executing or attempting to execute the scheme.") (quoting United States v. DeSantis,

237 F.3d 607, 613 (6th Cir. 2001)) (modifications in original).  Although defendant argues that

"[t]he connection between the allegation of improperly preparing client bills – which creditors

and the bankruptcy trustee would not even normally see – and a bankruptcy fraud scheme is far

from clear," Defendant Timothy D. Naegele's Reply to the Government's Response to

Defendant's Motion to Dismiss Count 11(B)(c) of the Indictment at 3, it is entirely clear that the

preparation of legal bills so as to conceal the existence of clients easily could be part of a scheme

to defraud defendant's creditors.

   The indictment refers to each of the subparagraphs of Section 11(B) as among the

"manner and . . . means" used by the defendant to execute and to conceal his scheme to defraud.

See Indictment ¶ 15.  Such "manner and means" paragraphs typically are included in fraud and

conspiracy indictments.  They are proper even though they do not – and are not required to –

allege a crime in and of themselves, but instead set forth acts or conduct intended to illustrate

how the scheme to defraud was carried out.  See United States v. Hitt, 249 F.3d 1010, 1022-23

(D.C. Cir. 2001).  Accordingly, the allegation set forth in Section 11(B)(c) is not irrelevant and

therefore will not be stricken.  See United States v. Hsia, 24 F. Supp. 2d at 65.

### III.  CONCLUSION

   Counts 1, 2, and 3 of the indictment rely on defendant's responses to a question

on the Statement of Financial Affairs which is "fundamentally ambiguous," and cannot give rise

to a perjury charge.  The question at issue in Count 4, on the other hand, was not fundamentally

ambiguous, and the Court will not dismiss that Count.  Count 9 will be dismissed because

defendant's answer to the relevant question, posed during the creditors' meeting, was literally

true.  The statement at issue in Count 10, however, was not literally true, and that Count will not

be dismissed.  Finally, the Court denies defendant's motion to strike Section 11(B)(c) of the

indictment because allegations contained therein are relevant to the charge contained in

Count 11.

      An Order to this effect will issue this same day.

      SO ORDERED.


      /s/_____
      PAUL L. FRIEDMAN
      United States District Judge

DATE: May 2, 2006