UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| v. ) | Criminal No. 05-0151 (PLF) |
| TIMOTHY D. NAEGELE, ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the Court on the motion [73] of non-party Jeffrey Sherman for a protective order and the motion [78] of the United States to compel Mr. Sherman to produce records in response to a subpoena.[1]

I.  BACKGROUND

Jeffrey Sherman is an attorney who represented defendant Timothy Naegele in connection with the preparation and filing of Naegele's bankruptcy petition of March 29, 2000. See Def. Opp. at 1. Sherman was served with a subpoena for documents and trial testimony by the United States on May 23, 2006. To protect his client's rights, Sherman filed a motion for a protective order which is now before the Court. The protective order is sought to "prevent Mr. Sherman's testimony and the production of documents commanded by the subpoena issued on

---

[1] The papers submitted in connection with these motions include: Non-party Jeffrey Sherman's Motion for a Protective Order ("Sherman Mot."); the United States' Motion to Compel Jeffery Sherman to Produce Records Called for by the Rule 17(c) Subpoena ("Govt. Mot."); Jeffrey Sherman's Opposition to the United States' Motion to Compel Production of Records ("Sherman Opp."); Defendant's Opposition to the Government's Motion to Compel Jeffrey Sherman to Produce Records ("Def. Opp."); and the United States' Reply in Support of Motion to Compel Jeffrey Sherman to Produce Records ("Govt. Reply").

May 23, 2006 to the extent that such information is protected by the attorney-client privilege." Sherman Mot. at 5.[2]

On July 11, 2006, Sherman "produced approximately 25 documents, which includes duplicate copies of several documents, together with a privilege log listing 50 documents withheld pursuant to purported attorney/client and work product privileges." Govt. Mot. at 1. The United States moved to compel Sherman to produce the withheld documents and "requests the court to conduct an *in camera* review to determine the merits of the asserted privileges, and if any exist, the application of the crime/fraud exception to those privileges." Govt. Mot. at 1. In Sherman's opposition, he also requested, in the alternative to denying the United States' motion in whole, that the Court conduct an *in camera* review "in order to determine whether the attorney/client privilege and/or the work product doctrine prohibit disclosure of any of the documents withheld from production," Sherman Opp. at 4, and to "determine whether the crime/fraud exception applies to each document not produced pursuant to the attorney-client privilege and/or the work product doctrine." Id. at 5.

On November 13, 2006, this Court issued a Minute Order stating that it "grants the requests of non-party Jeffrey Sherman and of the United States to examine *in camera* the documents listed on the 7/11/2006 privilege log submitted by Mr. Sherman to the United States, in order to determine whether the documents: (1) were validly withheld under the attorney/client privilege or as attorney work product; and (2) whether the crime-fraud exception applies."

---

[2] The Court will not rule on any testimony from Mr. Sherman in the abstract. Rather, if Mr. Sherman is called as a witness at trial, the Court will rule on any objections to specific questions during trial.

Minute Order of November 13, 2006. Sherman then delivered 89 documents and an updated privilege log (dated November 22, 2006) to the Court.

On December 12, 2006, defendant's counsel filed a notice with the Court which included as attachments a letter to the Court from defendant's counsel, a copy of the November 22, 2006 updated privilege log, and a copy of the subpoena at issue. Counsel's letter states: "As we have previously informed Mr. Hicks [Mr. Sherman's counsel] and the government . . . the defense has not claimed privilege or work-product protections for the documents represented by entries 51 through 87, or entry 89, on the log." December 12, 2006 Letter from Jonathan S. Jeffress to the Court, Docket No. 136. Counsel also states that "these documents are therefore not responsive to the Government subpoena" and "[a]ccordingly, we believe that the Court need not consider whether these documents were properly withheld as privileged." Id. The government has not responded or otherwise objected to counsel's statements or suggestion in the letter, and Court therefore has not reviewed and will not discuss herein the documents represented by entries 51 through 87 and entry 89 on the November 22, 2006 privilege log.[3] The Court now has reviewed the withheld documents. For the reasons explained below, it will grant in part and deny in part each motion.

---

[3] Although the documents themselves are also numbered with Bates stamps, for convenience the Court will refer in this Opinion to the documents it reviewed *in camera* by the number associated with each document on the November 22, 2006 revised privilege log.

## II.  DISCUSSION

### *A. Attorney-Client Privilege*

The attorney-client privilege is "one of the oldest recognized privileges" and protects confidential communications between a client and his attorney.  Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  The existence of the privilege ensures "full and frank communication between attorneys and their clients" and is essential to the maintenance of the confidentiality of attorney-client communications needed to promote the effective rendering of legal services.  Upjohn Co. v. United States, 449 U.S. at 389; see In re Sealed Case, 107 F.3d 46, 49 (D.C. Cir. 1997).  To demonstrate that the attorney-client privilege shields a document from disclosure, the party asserting the privilege must show (1) that there was a communication between an attorney and his or her client, (2) that the communication was made in confidence, (3) that it was made to an attorney by a client, and (4) that it was made for the purpose of seeking or obtaining legal advice. The privilege also protects communications from the attorney to the client or the client to the attorney that would reveal directly or indirectly the substance of the client's communications to the attorney in seeking legal advice.  See Upjohn Co. v. United States, 449 U.S. at 390-92; Mead Data Central, Inc. v. United States Dep't of Air Force, 566 F.2d 242, 254 n.25 (D.C. Cir. 1977).

> The D.C. Circuit has explained that the attorney-client privilege applies only if :
>
> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or

>(ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950)). The D.C. Circuit has further explained that "[c]ommunications from attorney to client are shielded if they rest on confidential information obtained from the client." Id. at 99. Thus, "privilege cloaks a communication from attorney to client based, *in part at least*, upon a confidential communication to the lawyer from the client." Id. (emphasis in original) (internal quotations, citations and brackets omitted). It also follows that "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." Id.

The attorney-client communication is construed narrowly, to protect from disclosure only those communications from the client to the attorney which were intended to remain confidential and made for the purpose of seeking legal advice. See Evans v. Atwood, 177 F.R.D. 1, 3 (D.D.C. 1997). Because the purpose of the privilege is to promote a "free and open discussion between the client and the attorney in seeking or giving legal advice, the privilege should protect only the client's communications to the attorney (and so much of the attorney's communications to the client that might tend to reveal a client communication)" – and, of course, the legal advice itself – "and not facts or other information contained in the communication." In re Ampicillin Antitrust Litigation, 81 F.R.D. 377, 389 (D.D.C. 1978). The burden is on the one claiming privilege to present sufficient facts to establish with reasonable certainty that the privilege applies. See In re Sealed Case, 737 F.2d at 99.

The issue of what precisely constitutes confidential client communications protected by the attorney-client privilege becomes somewhat more complicated in the context of legal representation for the purpose of filing a bankruptcy petition. In accordance with the very elements of the attorney-client privilege set forth above, information and communications imparted from a client to his attorney *for the purpose of their disclosure* in a bankruptcy filing are not privileged because information intended to be disclosed in such a filing by definition is not information provided to the attorney in confidence. See United States v. White, 950 F.2d 426, 430 (7th Cir. 1991). When there is no intent that the communication remain confidential, the privilege does not attach. See id. ("When information is disclosed for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court."). That said, any *legal advice* sought or obtained on the basis of confidential communications between a client and his attorney, even in the context of the preparation of a bankruptcy petition, is protected by the attorney-client privilege. See United States v. Bauer, 132 F.3d 504, 508-09 (9th Cir. 1997).

While there is no D.C. Circuit case discussing the attorney-client privilege in the bankruptcy context, in the tax context the D.C. Circuit has held that "the privilege is said not to attach to information which the taxpayer intends his attorney to report in the contents of a tax return." In re Sealed Case, 877 F.2d 976, 978-79 (D.C. Cir. 1989) (internal quotations and citations omitted). "If a client communicates information to his attorney with the understanding that the information will be revealed to others, that information *'as well as the details underlying the data* which was to be published' will not enjoy the privilege." Id. (emphasis in original)

6

(quoting United States v. (Under Seal), 748 F.2d , 871 875 (4th Cir. 1984)).  That principle certainly applies to bankruptcy filings as well.  As the D.C. Circuit also noted, however, there is a distinction between documents provided by the client revealing details underlying past or future returns, which might either be non-confidential or as to which the privilege might have been waived by the filing (or anticipated filing) of the tax return, and those that "reveal directly the attorney's confidential advice." Id. at 979 ("The documents sought in this case reveal directly the attorney's confidential advice, and their disclosure thereby invades the core of the privilege.")

This Court is persuaded by the reasoning of White, Bauer, and In re Sealed Case.  It therefore concludes that while communications from the client which reveal information that was not meant to remain confidential are not protected by the attorney-client privilege, any communications (or portions thereof) that embody an attorney's confidential legal advice – or any facts provided by the client in confidence, or questions asked by the client, in seeking such advice – are protected by the attorney-client privilege.

As noted, a total of 51 documents were withheld by Mr. Sherman on grounds of attorney-client privilege and have been reviewed by the Court.  The November 22, 2006 privilege log asserts that each of the 51 documents is protected by the attorney-client privilege.[4]  The Court does not agree with the assertion of privilege with respect to most documents, and sets forth its reasoning with respect to particular groups of documents below.

---

[4]   A few documents were withheld on grounds of both attorney-client privilege and work product privilege.

1. Bills for Services Rendered and Retainer Agreements

Several of the documents withheld by Mr. Sherman are billing statements, retainer agreements and letters relating to his representation of Naegele. It is established that billing statements and retainer agreements usually are not privileged. As the Fourth Circuit has explained:

> The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege.

Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999) (quoting Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992)) (internal quotations and citations omitted); see also In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000). The descriptions in Mr. Sherman's billing statements to Naegele are general and do not reveal any litigation strategy or other specifics of the representation or any confidential client communications. They therefore are not protected by the attorney-client privilege. The same is true with respect to the retainer letters and correspondence relating to the representation. The documents that fall within this category are: 1, 2, 20, 31 and 88. The Court concludes that these documents must be produced.[5]

---

[5] There is also a claim of work product privilege for document 88, which will be addressed infra at 13.

2. Draft Bankruptcy Filings

The Court concludes that draft bankruptcy filings are no more entitled to protection on the basis of privilege than are the filings actually made. By definition, they are not *confidential communications* between a client and an attorney; they and their contents are intended to be disclosed. They therefore are not protected from disclosure by the attorney-client privilege. As the Seventh Circuit has said: "When information is disclosed [by a client] for the purpose of assembly into a bankruptcy petition and supporting schedules, there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court." United States v. White, 950 F.2d at 430. Documents 6, 37, 38, 39, 40, 42, 43, 46, 47, 49, and 50 are draft bankruptcy filings. These documents must be produced unless they are protected by the attorney work product doctrine, which is discussed below.

3. Letters, Notes, Fax Cover Sheets and E-mails

Mr. Sherman withheld a number of fax cover sheets and letters/faxes/notes/e-mails between himself and Naegele which, upon examination, do not contain any confidential client communications or legal advice. They therefore are not protected by the attorney-client privilege. These documents are: 4, 7, 8, 13, 17, 18, 19, 21, 22, 24, 25, 26, 27, 29, 30, 34, 41, and 48. The Court concludes that these documents must be produced, so long as they are not protected by the attorney work product doctrine, which is discussed below. The same is true for Mr. Sherman's draft letters to others – documents 28, 35, 44, 45 – and the letter from America

Online, Inc. that Naegele forwarded to Mr. Sherman, which is document 36. Those documents also must be produced in their entirety.

4. E-mails and Letters Which May Be Redacted

Based on its *in camera* review of the withheld documents, the Court finds that there are several documents which are, in part, confidential communications between Naegele and Sherman that are protected by the attorney-client privilege. Those documents may be redacted in accordance with the following instructions and then must be produced,.

Document 3 must be produced, except that the seventh paragraph – beginning "With respect to" – may be redacted.

Document 9 must be produced, except that the paragraph numbered "5" may be redacted.

Document 10 must be produced, except that the paragraph numbered "5" may be redacted. The paragraph after the one that is numbered "6" – beginning "Finally, when" – also may be redacted.

Document 11 must be produced, except that the paragraph numbered "5" may be redacted.

Document 12 must be produced, except that the paragraph numbered "5" may be redacted.

Document 14 must be produced, except that the section numbered "(1)" following the paragraph numbered "3" and paragraph "A" (beginning on the fourth line from the bottom of

the first page) may be redacted, until the start of paragraph "(2)." The paragraph lettered "A" under the paragraph numbered "7" on the second page also may be redacted.

Document 15 must be produced, except that the first full paragraph may be redacted.

Document 16 must be produced, except that paragraph "A" after the paragraph numbered "3" on the second page may be redacted; paragraph "A" after the paragraph numbered "7" on the third page also may be redacted; and paragraph "D" after the paragraph numbered "7" also may be redacted.

Document 23 must be produced, except that the final full paragraph beginning with the last line on the first page of the document – beginning "One other question" – may be redacted.

Document 32 must be produced, except that the following paragraphs may be redacted: paragraphs 8 through 12 on the first page (after "You asked:" and before "You added:"); the two paragraphs starting with the last three lines on the first page and continuing through the first seven lines of text on the second page; the fourth paragraph from the bottom of the second page, after "for Friday morning delivery" and before "You added"; on the third page, the second full paragraph (the fourth and fifth lines of text on the page); on the third page, the first five sentences of the third paragraph; on the third page, the fourth paragraph; and, on the third page, the first sentence of the fifth paragraph.

Document 33 must be produced, except that the sentence – beginning "Even if" – on the fourteenth line of the page may be redacted.

*B. Work Product Doctrine*

The work product doctrine protects only materials prepared "in anticipation of litigation." FED. R. CIV. P. 26(b)(3). To qualify for work product protection, litigation need not be actual or imminent; it need only be "fairly foreseeable." Coastal States Gas. Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980). Thus, while "some articulable claim, likely to lead to litigation, must have arisen," id., the privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is [yet] contemplated." Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992). "[T]he 'testing question' for the work product privilege . . . is whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). To meet this standard, a party "must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable" in the circumstances. Id.[6]

Work product privilege has been asserted as to the following documents: 28, 37, 38, 42, 43, 44, 46, 47, 49, 50, 88. Several of these documents – 37, 38, 42, 43, 46, 47, 49, 50 – are draft versions of Naegele's bankruptcy forms. The Court agrees with the government's assessment of the status of these documents:

> The draft versions of Naegele's bankruptcy forms in particular cannot be covered by the work product privilege because the factual information contained in them does not constitute Sherman's mental processes, was intended to be disclosed to third

---

[6] This formulation of the test -- described as the "because of litigation" test -- is to be contrasted with the "primarily to assist in litigation" test adopted by some other circuits. See State of Maine v. United States Department of Interior, 298 F.3d 60, 67-68 (1st Cir. 2002); United States v. Adlman, 134 F.3d 1194, 1198-1203 (2d Cir. 1998).

> parties, and the forms were not prepared in anticipation of
> litigation. Naegele retained Sherman to file a bankruptcy petition –
> to disclose to a court and creditors expansive detail about his
> financial condition – not to litigate a case.

Govt. Reply at 5. This bankruptcy filing was not itself "litigation" in anticipation of which protected attorney work product can be created. The Court therefore concludes that the draft bankruptcy filings are not protected by the work product privilege. These documents must be produced.

Document 28 is, as the privilege log notes, a draft letter to Brian W. Cubbage, Esq., who represents one of Naegele's creditors. It is not attorney work product and must be produced.

Document 44 is a draft letter from Mr. Sherman to Wendell Webster, Esq. Mr. Webster was the bankruptcy trustee for Naegele's March 29, 2000 bankruptcy filing. The letter relates to Naegele's bankruptcy proceeding, and is no more protected by the attorney work product privilege than the draft bankruptcy filings, as it was not prepared in anticipation of litigation. It therefore must be produced.

Document 88 appears to be a draft attorney bill or timekeeping report relating to the legal services provided to Naegele, described on the privilege log as "O'Rourke Katten & Moody Detail Slip Listing."[7] Attorney bills and/or timekeeping reports are not attorney work product prepared in anticipation of litigation. This document therefore must be produced.

---

[7] O'Rourke Katten & Moody is (or was) Mr. Sherman's law firm.

*C. The Crime-Fraud Exception*

There is no protection for statements or information provided by a client to an attorney, even though in confidence, if the purpose of the communication or consultation is to further a crime or fraud. As the D.C. Circuit has explained:

> [T]here are slight[] . . . differences in the formulation of the test for the crime-fraud exception as applied to the two privileges in question, attorney-client and work-product. To establish the exception to the attorney-client privilege, the court must consider whether the client "made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act," and establish that the client actually "carried out the crime or fraud." In re Sealed Case, 107 F.3d 46, 49 (D.C.Cir.1997). To establish the exception to the work-product privilege, courts ask a slightly different question, focusing on the client's general purpose in consulting the lawyer rather than on his intent regarding the particular communication: "Did the client consult the lawyer or use the material for the purpose of committing a crime or fraud?" Id. at 51.

In re Sealed Case, 223 F.3d 775, 778 (D.C. Cir. 2000).

While the burden is on the one asserting a privilege to show that a communication is privileged, the burden shifts under the crime-fraud exception to the one seeking to pierce or overcome the privilege. See In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985). More specifically, the crime-fraud exception is triggered when the party seeking to overcome or pierce a privilege provides *prima facie* evidence that the client was seeking the attorney's advice or consulting with the attorney in furtherance of a plan of wrongdoing. See United States v. Bauer, 132 F.3d at 509; United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989); In re Sealed Case, 754 F.2d at 399. Having reviewed the documents *in camera*, the Court has found no evidence on the face of the documents that Naegele "made or received the otherwise privileged

communication[s] [to or from his lawyer] with the intent to further an unlawful or fraudulent act." In re Sealed Case, 107 F.3d at 49. Nor has it found evidence with respect to whether or not Naegele actually "carried out the crime or fraud," id., which is of course the ultimate question in this criminal proceeding. The Court concludes that the government has failed to establish a *prima facie* case that the crime-fraud exception to the attorney-client privilege and/or attorney work product is applicable in this case.

III. CONCLUSION

For the foregoing reasons, the Court finds that the attorney-client privilege protects parts of a few of the documents withheld by Mr. Sherman from disclosure; that the attorney work product doctrine does not protect any of the documents withheld by Mr. Sherman from disclosure; and that the government has not shown that the crime-fraud exception should apply. Accordingly, the documents withheld by Mr. Sherman must be produced, although several of them may be redacted in the manner described above.[8] It therefore is hereby

ORDERED that the motion [73] of non-party Jeffrey Sherman for a protective order is GRANTED in part and DENIED in part; it is

FURTHER ORDERED that the motion [78] of the United States to compel Mr. Sherman to produce records in response to a subpoena is GRANTED in part and DENIED in part; and it is

---

[8] The Court notes that if the defendant decides to raise an advice of counsel defense at trial, the attorney-client privilege and the work product privilege will be waived completely, and the documents will have to be produced in their entirety. See, e.g., Hunt v. Blackburn, 128 U.S. 464, 470 (1888); United States v. White, 887 F.2d at 270 (reliance-on-advice-of-counsel defense waives the attorney-client privilege); In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982).

FURTHER ORDERED that the documents shall be produced to the United States in conformity with this Opinion on or before January 10, 2007.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   January 4, 2007