UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
      v.                            )
                                    )   Criminal No. 05-0151 (PLF)
TIMOTHY D. NAEGELE,                 )
                                    )
            Defendant.              )
_____)


MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion to compel the production of *Brady* material ("Mot."),[1] the response of the United States in opposition ("Opp."), and defendant's reply ("Reply"). Specifically, the defendant requests:

> (1) evidence, government statements, and testimony from the second grand jury investigating defendant tending to undermine Counts 6 and 11 of the Indictment; (2) records reflecting any contemporaneous review of defendant's bankruptcy petition by the Office of the U.S. Trustee for Region 4; (3) guidance materials and commentary on the standardized bankruptcy forms from the U.S. Trustee Program undermining the Government's reading of those forms, suggesting the forms are ambiguous, or suggesting that errors similar to those defendant is alleged to have made are common among debtors; and (4) materials reflecting the judgment of U.S. Trustee Program personnel that defendant's conduct was lawful.

Mot. at 3.

At the outset, the Court notes that too often in criminal cases the prosecution and defense are like two ships passing in the night when it comes to *Brady*; they fail to begin with a common understanding of the *Brady* decision and what is meant by the government's so-called

---

[1] See Brady v. Maryland, 373 U.S. 83 (1963).

"*Brady* obligation." That is why this Court recently clarified the meaning of *Brady*, how it is to be applied by the Department of Justice and the U.S. Attorney's Office in this Court, and what the government is obligated to do to meet its responsibilities under *Brady*. See United States v. Safavian, 233 F.R.D. 12, 16-20 (D.D.C. 2005) ("Safavian I"); see also United States v. Hsia, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998).[2] To review, under *Brady* and its progeny

> [t]he government is obligated to disclose all evidence relating to guilt or punishment which might be reasonably considered favorable to the defendant's case, that is, all favorable evidence that is itself admissible or that is likely to lead to favorable evidence that would be admissible, or that could be used to impeach a prosecution witness.

Safavian I, 233 F.R.D. at 17 (internal quotations and citations omitted). Under *Brady*, prosecutors have "an affirmative duty to search possible sources of exculpatory information, including a duty to learn of favorable evidence known to others acting on the prosecutor's behalf. . . ." Id. Furthermore, the duty to disclose evidence "favorable to the accused" pretrial (and during trial) applies "without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." Id. at 16.

While the government may not agree with the undersigned's reading of *Brady* – which the government's internal policy memoranda and guidance still seem to reject, despite recent salutary amendments thereto[3] – the government's *Brady* obligations in this Court are as

---

[2]    As made clear by Safavian, however, now that the Court realizes that its view of *Brady* and the government's have not been consistent for many years, it no longer accepts conclusory assertions by the Department of Justice that it "understands" its *Brady* obligations and "will comply" or "has complied" with them. The Court therefore can no longer endorse the view expressed in the first sentence of the final paragraph of the *Brady* discussion in Hsia. See United States v. Hsia, 24 F. Supp. 2d at 30.

[3]    See U.S. Attys.' Man. § 9-5.001 (October 19, 2006).

they were explained in Safavian I and reiterated in Safavian II:

> The Court fully understands that its reading of the term "favorable to the accused" under *Brady* and its opinion that the post-trial "materiality" standard is irrelevant to pretrial and in-trial *Brady* decisions to be made by prosecutors and trial judges are inconsistent with the way some Justice Department lawyers have approached their *Brady* obligations in the past.

United States v. Safavian, 233 F.R.D. 205, 206-07 (D.D.C. 2006) ("Safavian II").  If any of the government's responses to the defendant's *Brady* requests in this case, or any of the positions the government has taken in its opposition to defendant's motion to compel, have not rigorously adhered to the decisions of this Court in Safavian, the government's *Brady* responses and its opposition brief must be supplemented promptly.

As for defendant's specific requests, the Court grants defendant's motion to compel with respect to the first request and – with limitations and refinements – portions of the second and third requests.  The fourth request appears to be moot.

First, if the government's second grand jury investigation uncovered evidence or other information that prior to May 4, 2000 the defendant induced Mr. and Mrs. Albers to pursue a lawsuit that had flaws of which the defendant was aware, or evidence that the Albers expressed any reluctance to pursue or continue to pursue the suit, the government must disclose such material under *Brady*.  Such information could constitute favorable admissible evidence – or reasonably could lead to such evidence – that could undermine the allegations in Counts 6 and 11 of the indictment.[4]

---

[4] To the extent that defendant seeks "statements by prosecutors conducting the grand jury," and statements reflecting internal deliberations of the Department of Justice, Mot. at 7; Opp. at 9, he is not entitled to them under *Brady*.  See Safavian I, 233 F.R.D. at 20 ("the internal deliberative processes of the Department of Justice, the FBI, and [other Executive

Second, defendant requests any records reflecting any contemporaneous review of defendant's bankruptcy file by the Office of the U.S. Trustee for Region 4, including any records "reflecting the decision to approve defendant's petition and/or not to refer his case for criminal prosecution." Mot. at 8. The government responds that U.S. Trustee Dennis Early "has searched his files, and there are no documents that relate to any 'approval' of Naegele's bankruptcy petition." Opp. at 9. There are two problems with this response. First, a search by Mr. Early of his own files is an inadequate and incomplete search because the Trustee's files are not the only reasonably likely source for such records. The government must also search the files of the main office of the Region 4 Trustee in Columbia, South Carolina and any other files where the requested information might likely be found; it then must certify that it has done so. See Safavian I, 233 F.R.D. at 17. Second, unless the word "approval" in the government's response is meant to – and does in fact – include approval, disapproval and/or the decision "not to refer his case for criminal prosecution," Mot. at 9, the response is not responsive to defendant's *Brady* request. As to the last, however – records relating to the Regional Office's or the Trustee's decision not to refer defendant's case for criminal prosecution – the defendant is not entitled to such disclosures under *Brady*. See Safavian I, 233 F.R.D. at 20; United States v. Blackley, 986 F. Supp. 600, 602 (D.D.C. 1997).

Third, defendant requests any "guidance materials or commentary from the U.S. Trustee Program suggesting (a) that the standardized bankruptcy forms are ambiguous in material

---

Branch agencies] are irrelevant to the preparation of the defense."). To the extent that the government argues that requests for documents in the first and second of the four subcategories of materials under this first request are unreasonable because they are not time-limited, see Opp. at 6-7, the Court will read the phrase "prior to May 4, 2000" into all four requests.

respects; (b) that errors identical or similar to those defendant is alleged to have made are common or frequent among debtors; or (c) that defendant's alleged erroneous readings of the forms are in fact correct." Defendant's Proposed Order; see Mot. at 10-11. The Court concludes that if general guidance materials or policy statements exist that state or suggest, for example, that Schedule I calls for net monthly income rather than gross revenue or that an attorney's contingent fee agreements should be listed on Schedule G, not on Schedule B, such evidence may constitute favorable evidence that is itself admissible or may lead to favorable evidence that would be admissible. Safavian I, 233 F.R.D. at 17. Defendant therefore is entitled to such internal guidance and policy materials, but he is not entitled to any specific debtor information or the bankruptcy filings of any particular debtor. See id. at 18.[5] The government must promptly cause a search to be conducted of all government files where such records might be found, promptly provide any responsive documents to the defendant, and certify to the Court the nature and scope of the search it has conducted and the results thereof. See Safavian I, 233 F.R.D. at 17.[6]

---

[5] The government's "fishing expedition" quotation from Safavian I, see Opp. at 11, related not to the kind of general guidance and policy manuals ordered disclosed both there and here, but to specific disciplinary actions about specific other employees. See Safavian I, 233 F.R.D. at 18.

[6] The statement from one prosecutor that "I am not aware of 'any guidance materials and commentary . . .'" that constitutes *Brady* materials is plainly insufficient. Opp. at 11; see Safavian I, 233 F.R.D. at 19 n.5. It fails to provide any assurance that an adequate search for records has been conducted or that the proper reading of *Brady* has been applied. The further representation that "USTP has in fact reviewed its policy manuals and guidance memorandums and has uncovered no policies or directives which contradict the government's charges in this case," Opp. at 11, may or may not suffice – depending on what files were searched, for what kinds of documents the USTP searched, and whether those conducting the search scrupulously applied the standards announced in Safavian.

Fourth, the defendant requests any materials reflecting the judgment of Trustee Program personnel that defendant's conduct was lawful, including any materials undermining the factual allegations in the indictment.  See Mot. at 11-12. To the extent that defendant seeks documents or records reflecting the internal deliberations of the Department of Justice leading to the decision to seek an indictment, he is not entitled to them under *Brady*, even if some prosecutor "expressed doubts" that defendant's conduct "amounts to a crime or warrants prosecution."  Mot. at 12; see Safavian I, 233 F.R.D. at 20.  To the extent that the request is more limited, the government appears to have complied with this request, rendering it moot.  See Opp. at 13-14.

For the foregoing reasons, it is hereby

ORDERED that defendant's motion [128] to compel production of *Brady* material is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the government shall conduct all necessary searches and produce to the defendant any and all materials that are responsive to the defendant's first, second and third requests (as limited by this Opinion) on or before January 16, 2007, and certify to the Court in writing that it has done so.  Alternatively, the government by that date may submit to the Court for *in camera* review all documents and records that arguably must be produced pursuant to this Opinion.

SO ORDERED.

DATE:  January 5, 2007

/s/_____
PAUL L. FRIEDMAN
United States District Judge