UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
UNITED STATES OF AMERICA,             )
                                                    )
        v.                                          )
                                                    )     Criminal No. 05-0151 (PLF)
TIMOTHY D. NAEGELE,                    )
                                                    )
        Defendant.                            )
_____)


MEMORANDUM OPINION AND ORDER

        This matter is before the Court on the request of defendant Timothy D. Naegele

for "inspection of the full Grand Jury minutes, instructions, subpoenas and other discovery,

together with an evidentiary hearing[.]"  Defendant's Memorandum of Facts and Law Regarding

Potential Grand Jury Violations and Further Proceedings at 1.   For the reasons explained below,

the Court grants defendant's request for inspection and its further request for an evidentiary

hearing.  See id. at 24-27.

        Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure provides that

"[t]he court may authorize disclosure -- at a time, in a manner, and subject to any other

conditions that it directs -- of a grand-jury matter . . .  at the request of a defendant who shows

that a ground may exist to dismiss the indictment because of a matter that occurred before the

grand jury[.]"[1]  While there is some small disagreement among courts regarding what precise

standard a defendant must meet in order to gain disclosure of grand jury materials under Rule

6(e)(3)(E)(ii), most courts have held that the appropriate standard is that of "particularized

_____
[1]        The Federal Rules of Criminal Procedure recently were restyled and renumbered.  The
relevant portion of Rule 6 formerly was numbered Rule 6(e)(3)(C)(ii).  For convenience and
clarity, the Court will refer to the Rule only by its current number.

need," borrowed from the standard under the case law applying Rule 6(e)(3)(E)(i).  See Ridings

v. Department of Justice, 38 Fed.Appx. 20, 21; 2002 WL 1359490, *1 (D.C. Cir. 2002) (per

curiam) (unpublished) ("Even assuming appellant could invoke Rule 6(e)(3)(C)(ii), his claim

nonetheless fails because appellant did not make a 'showing of particularized need' for

disclosure of the grand jury transcripts . . .  The district court properly held that appellant's

unsupported assertion that a grand jury did not indict him does not constitute the showing of

particularized need required under Fed.R.Crim.P. 6(e)(3)(C)(ii).") (internal citations omitted).

See also United States v. Labate, 2001 WL 533714 at *20 (S.D.N.Y. May 18, 2001) ("To be

entitled to disclosure of grand jury minutes, defendant must make a showing of 'particularized

need' that outweighs the strong interest in maintaining the secrecy of grand jury proceedings.");

United States v. Nguyen, 314 F. Supp. 2d 612, 616 (E.D.Va. 2004) (defendant must show that

"particularized and factually based grounds exist . . . [that] may create a basis for dismissal of

the indictment."); United States v. Abcasis, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992) (defendant

"has the burden of asserting that particularized and factually based grounds exist to support the

proposition that irregularities in the grand jury proceedings may create a basis for dismissal of

the indictment.").  Accord United States v. Broyles, 37 F.3d 1314, 1318 (8th Cir. 1994) (using

particularized need standard); United States v. Puglia, 8 F.3d 478, 480 (7th Cir. 1993) (same);

United States v. Lisinski, 728 F.2d 887, 893 (7th Cir. 1984) (same); United States v. Dunn, 2005

WL 1705303 at *1 (S.D.N.Y. July 19, 2005) (same); United States v. Mazzola, 183 F. Supp. 2d

195, 197-98 (D. Mass. 2001) (same).

        It is also settled that conclusory or speculative allegations of misconduct do not

meet the particularized need standard;  a factual basis is required.  See, e.g., United States v.

Broyles, 37 F.3d at 1318; United States v. Lisinski, 728 F.2d at 893; United States v. Nguyen, 314 F. Supp. 2d at 616; United States v. Abcasis, 785 F. Supp. at 1119.  In this case, the Court has before it a rare example of a criminal defendant who can actually make a "particularized and factually based" showing that grounds exist to support the proposition that irregularities may have occurred in the grand jury proceedings and may justify the dismissal of one or more counts of the indictment.  Defendant can make that showing here because the government has provided a proposed single trial exhibit (to the defendant and to the Court) of the defendant's Statement of Financial Affairs ("SOFA"), the first four pages of which were filed with the Bankruptcy Court and presented to the grand jury, and the last page of which came from defendant's bankruptcy lawyer's files and was not received by the government until January 10, 2007.  That last page, in addition to containing substantive Items 19-21 of the SOFA, also contains the signature section in which a debtor swears to the information contained in the SOFA under the penalty of perjury. The government has conceded that this page was never presented to the grand jury. See Declaration of Joseph A. Capone ¶ 3.

At least five counts of the original eleven-count indictment, brought pursuant to 18 U.S.C. § 152(3) and 18 U.S.C. § 157, were based in whole or in part on the Statement of Financial Affairs.  Of those five original counts, Counts 7 and 11 are still pending;  the others were dismissed.  The government was aware that it lacked the signature page of the Statement of Financial Affairs when it presented evidence to the grand jury with respect to the SOFA and when it obtained the indictment in this case.  See Declaration of Joseph A. Capone ¶ 4. Furthermore, while the government has not yet conceded this point, the Court doubts that the government will ever be able to prove beyond a reasonable doubt that the signature page of the

3

Statement of Financial Affairs was ever filed with the Bankruptcy Court.[2]  Now that he has

received as Jencks material the testimony of FBI Agent Kendra McLamb --  the case agent who

testified before the grand jury -- defendant can show that neither the prosecutor nor Agent

McLamb disclosed to the grand jury during the agent's testimony that they lacked the SOFA

signature page.  See April 28, 2005 Testimony of Kendra McLamb at 7:3-8:4.  Indeed, the

questions posed and the answers given before the grand jury seemed to suggest that the SOFA

filed with the Bankruptcy Court did have a signed signature page.  See id. at 8:2-8:4.[3]  The

indictment obtained on the basis of this presentation is itself replete with references to the

Statement of Financial Affairs being signed under oath and being filed with the Bankruptcy

Court, although the prosecutor was aware at the time Agent McLamb testified before the grand

jury that there was no signature page on file with the Bankruptcy Court.  See, e.g., Indictment

¶¶ 2, 5, 9.  In fact, as noted, the government did not know until January 10, 2007 that any signed

signature page existed anywhere.

         On the basis of this record, the Court finds that this is one of those exceedingly

rare cases where the defendant has been able to make a factually based showing of particularized

---

2       The government has asserted both in its briefs on this issue and orally in hearings that
there is no filing requirement under 18 U.S.C. §152(3).  Defendant disagrees.  Independent of the
issue of whether the completed SOFA had to be *filed*, at the time of the indictment the
government had no evidence -- filed or unfiled -- that Mr. Naegele had ever *sworn* to the
information in the SOFA under the penalty of perjury at the time it presented this case to the
grand jury.

3       The government now states that it attributed Mr. Naegele's signature page for the
Schedules as attesting to the truth of both the Schedules and the SOFA.  See Declaration of
Joseph A. Capone ¶ 5;  United States' Response to Defendant's Memorandum Regarding
Potential Grand Jury Violations and Further Proceedings at 4, 6, 7, 9, 13.  The signature page for
the Schedules, however, is clear on its face that it relates only to the Schedules.

4

need for the production and inspection of grand jury materials under Rule 6(e)(3)(E)(ii).  But even where such particularized need is shown, access must be limited only to those materials actually needed in order to pursue the motion to dismiss.  See United States v. Liuzzo, 739 F.2d 541, 545 (11th Cir. 1984); United States v. Mazzola, 183 F. Supp. 2d at 199.  In this case, the Court finds that the defendant is entitled to such materials as may help him to discover which remaining counts of the indictment, if any, may be affected by the possible misconduct or misleading nature of the presentation of the SOFA without a signature page to the grand jury, and any testimony related thereto.  In the circumstances presented by the parties in their motions papers and oppositions, and after reviewing the grand jury record *in camera*, the Court concludes that the defendant in this case should be allowed to see the entire grand jury record.

The Court sees no reason to limit the disclosure of the grand jury materials in this case for several reasons.  First, as defendant argues, "[o]nly a complete review of the entire Grand Jury proceeding can illuminate the extent of the government's reliance on the SOFA to obtain all remaining counts of the Indictment."  Defendant's Memorandum of Facts and Law Regarding Potential Grand Jury Violations and Further Proceedings at 20 n.12.  In particular, Count 11 of the indictment alleges a wide-ranging fraud encompassing both false statements in the SOFA and other fraudulent actions related to defendant's Bankruptcy Schedules, bankruptcy petition, and the Creditors Meeting.  Second, this is not a case with multiple defendants or complicated conspiracy allegations, in which it might make sense to limit the disclosure -- it is a bankruptcy fraud case against one individual.  The record of the grand jury proceeding was wholly related to Mr. Naegele and the counts of this indictment and will not reveal additional information that goes beyond the information sought by the defendant.  Third, having reviewed

the grand jury record *in camera*, the Court concludes that it would be fruitless to parse the information presented to the grand jury by count, as much of the testimony only makes sense in context and much of the information is relevant to multiple counts that include Count 7 and particularly Count 11.

In order for the defendant to properly prepare a supplemental memorandum, or for oral argument, relating to his motion to dismiss based on the proceedings before the grand jury, the Court will order production of the entire grand jury record to the defendant.  It may be that only Count 7, or perhaps Counts 7 and 11, are affected by the events that transpired before the grand jury, but it is appropriate in this case for the defendant to see the entire grand jury record in order to determine for himself what remedy he may seek from this Court in good faith in the circumstances presented.[4]  He does not, however, have the right to non-grand jury materials, such as the contemporaneous notes of the case agent or the prosecutor, and the Court will not order those non-grand jury materials to be produced.[5]

For the same reasons just discussed, the Court also will grant defendant's request for an evidentiary hearing.  The Third Circuit has held that when a district court has formed a reasonable suspicion of possible misconduct before a grand jury, the proper course is to hold an evidentiary hearing on the issue, rather than to assume the misconduct and any prejudice to the defendant therefrom.  See United States v. Soberon, 929 F.2d 935, 941 (3d Cir. 1991); see also In re Sealed Case, 877 F.2d 976, 982 (D.C. Cir. 1989) ("And, after indictment, a district court

---

[4]     Based on the filings to date and the Court's review of the *in camera* submissions and the relevant case law, the Court believes the defendant has an uphill battle with respect to all but possibly Counts 7 and 11 of the indictment.

[5]     Whether such material would constitute Jencks material at an evidentiary hearing is a matter for another day.

has ample discretion to inquire into any credible claim of prosecutorial misconduct."); United States v. Hsia, 1998 WL 634646 at *2 (D.D.C. Sept. 10, 1998) (evidentiary hearing allowed so defendant could attempt to develop evidence to support allegations).  Conversely, it is error to dismiss a count of the indictment without making a finding as to bad faith or intentional misconduct by the government, which cannot be done without first conducting an evidentiary hearing.  See United States v. Strouse, 286 F.3d 767, 772 (5th Cir. 2002).  The defendant in this case has made serious allegations, and the defendant has indicated that he may seek to dismiss more than just Count 7 based on the alleged misconduct.  But see note 4, supra.  Before the Court decides whether in this case any misconduct took place, whether such misconduct was intentional, whether any misconduct substantially influenced the grand jury's decision to indict (and as to which counts), and what, if any, prejudice the defendant has suffered as a result, see Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988), the Court finds it appropriate to hold an evidentiary hearing.

Accordingly, it is hereby

ORDERED that Defendant's request for the grand jury materials is GRANTED. Specifically, pursuant to Rule 6 (e)(3)(E)(ii) of the Federal Rules of Criminal Procedure, the government is ORDERED to produce the following materials to defendant by 5:00 p.m. on January 31, 2007:

(a)     All minutes from the grand jury proceedings in this case;

(b)     Any and all grand jury testimony by FBI Agent Kendra McLamb;

Assistant United States Trustee Dennis Early; and Panel Trustee Wendell Webster;

7

      (c)      Copies of the grand jury subpoenas served on April 21, 2005, and April 27, 2005, to Denise Curtis, Clerk of the United States Bankruptcy Court for the District of Columbia, and Jeffrey Sherman, defendant's bankruptcy attorney, respectively;

      (d)      Any and all documents related to the Justice Department's authorization of the grand jury subpoena issued to defendant's bankruptcy attorney, Jeffrey Sherman;[6] and

      (e)      Any and all documents returned to the government pursuant to the April 21, 2005, and April 27, 2005, grand jury subpoenas issued to Denise Curtis and Jeffrey Sherman, respectively; and it is

FURTHER ORDERED that the Court will hold an evidentiary hearing on February 2, 2007 beginning at 11:00 a.m.  At such hearing, at least the following witnesses should be made available by the government to testify: Joseph Capone; Agent Kendra McLamb; Assistant United States Trustee Dennis Early; and Wendell Webster.  The Court will advise counsel for Jeffrey Sherman that Mr. Sherman also must attend and provide testimony;  and it is

---

6      All but the first sentence of the response to question 10 in Exhibit 2 In Camera, filed in support of United States' Response to Defendant's Memorandum Regarding Potential Grand Jury Violation and Further Proceedings, may be redacted.

FURTHER ORDERED that jury selection is postponed until Monday, February 5, 2007.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 30, 2007