UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        v.                              )        Criminal No. 05-0151 (PLF)
                                        )
TIMOTHY D. NAEGELE,                     )
                                        )
        Defendant.                      )
_____)

OPINION

        This matter is before the Court on defendant's motion to dismiss Count 7 of the

indictment.[1]  Upon careful consideration of the legal arguments presented by counsel and the

record in this case, the Court will grant the motion and dismiss Count 7 of the indictment.


I.  BACKGROUND

        Defendant Timothy Naegele is an attorney licensed to practice law in California

and in the District of Columbia.  Naegele owns his own law firm as a sole proprietorship.  On or

about March 29, 2000, Naegele filed a Chapter 7 petition for personal bankruptcy in the United

States Bankruptcy Court for the District of Columbia.  See In re Naegele, Case No. 00-0601

(Bankr. D.C. 2000).  On May 4, 2000, as required by the Bankruptcy Code, he filed with the

Bankruptcy Court additional documents relating to his bankruptcy case.

_____

        [1]     There is also a pending motion to dismiss the indictment on grounds of
prosecutorial misconduct.  The Court held an evidentiary hearing on the motion on February 6
and 7, 2007.  The Court will address that motion in a separate Opinion that will be issued this
same day.

Pursuant to 11 U.S.C. § 341, on May 23, 2000, the bankruptcy trustee conducted a creditors' meeting at which Mr. Naegele was questioned under oath by the trustee and several creditors about the information provided in the documents filed with the Bankruptcy Court, and about his financial situation in general.  On September 5, 2000, the Bankruptcy Court granted Mr. Naegele a discharge from bankruptcy under 11 U.S.C. § 727.  The bankruptcy case was closed on September 20, 2000.

On April 28, 2005, a federal grand jury returned an eleven-count indictment against Naegele, alleging that he had made numerous misstatements on his bankruptcy forms and in the creditors' meeting.  He was charged in three counts with testifying falsely under oath at the creditors' meeting (18 U.S.C. § 152(2)), in seven counts with making false declarations or statements under penalty of perjury with respect to the documents he filed in the Bankruptcy Court (18 U.S.C. § 152(3)), and in one count with bankruptcy fraud (18 U.S.C. § 157).[2]

### A.  Statement of Financial Affairs and Schedules

The Statement of Financial Affairs ("SOFA") is a five-page form that Naegele was required to complete as part of the bankruptcy proceeding.  See SOFA at 1 ("This statement is to be completed by every debtor."); Indictment ¶ 2.  Item 3a is located on the first page of the form, and instructs the debtor to list "all payments . . . aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case."  SOFA at 1.  The fifth and last page of the SOFA contains Items 19a, 19b, 20a, 20b, and 21, as well as a

---

[2]        The Court previously dismissed Counts 1, 2 and 3 of the indictment -- all relating to false statements made on the Statement of Financial Affairs filed in the Bankruptcy Court -- and Count 9, relating to false testimony under oath at the creditors' meeting.  See United States v. Naegele, 341 B.R. 349 (D.D.C. 2006).

section for the debtor to sign and attest to the facts contained in the entire document, under

penalty of perjury.  It reads as follows:

> DECLARATION UNDER PENALTY OF PERJURY BY
> INDIVIDUAL DEBTOR
>
> I declare under penalty of Perjury that I have read the answers
> contained in *the foregoing statement of financial affairs* and any
> attachments thereto and that they are true and correct to the best of
> my knowledge, information, and belief.

SOFA at 5 (emphasis added).

The Schedules are a series of forms, beginning with a Summary of Schedules, that

lists each individual Schedule from A to J, and the total of the amounts disclosed in each

individual Schedule.  Each Schedule has separate page numbers from the other Schedules.  At the

bottom of each Schedule is either the notation "No continuation sheets attached" or "Page ___ of

___", to be filled out by the debtor -- depending on how many continuation sheets are attached to

a particular Schedule.  The final page of the entire series of Schedules -- including both the

Summary of Schedules and the individual Schedules -- is a Declaration Concerning Debtor's

Schedules, in which a debtor must sign the following statement:

> DECLARATION UNDER PENALTY OF PERJURY BY AN
> INDIVIDUAL DEBTOR
>
> I declare under penalty of perjury that I have read *the foregoing
> summary and schedules*, consisting of ____ sheets, and that they
> are true and correct to the best of my knowledge, information and
> belief.

Declaration Concerning Debtor's Schedules (emphasis added).

In contrast to the declaration that is the last page of the SOFA, the Schedules

signature page is not marked with a page number.  Furthermore, the page contains nothing other

3

than the space for the debtor's signature -- presumably because it, unlike the SOFA signature

page, is part of a group of documents that could be of any length, depending on how many

continuation pages a debtor does or does not attach to each schedule.  The variability of the

length of the Schedules is further highlighted by the space allotted for a debtor to write in the

total number of "sheets" contained in "the foregoing summary and schedules."  On the

Declaration Concerning Debtor's Schedules in Naegele's bankruptcy file, the number 18 was

typed in, then crossed out, and the number 19 is written in.  There are in fact 19 pages relating to

Naegele's Schedules.

### B. Count 7 of the Indictment

18 U.S.C. § 152(3) criminalizes "knowingly and fraudulently mak[ing] a false

declaration, certificate, verification, or statement under penalty of perjury as permitted under

section 1746 of title 28, in or in relation to a case under title 11[.]"  Counts 1 through 7 of the

indictment allege that on May 4, 2000 Naegele knowingly and fraudulently made seven specific

material false statements or declarations "in his Statement of Financial Affairs and Bankruptcy

Schedules under penalty of perjury as permitted under section 1746 of title 28, in and in relation

to a case under title 11, filed in the United States Bankruptcy Court in the District of Columbia."

Indictment ¶ 9.  By its terms, 18 U.S.C. § 152(3) applies only to documents, because 28 U.S.C.

§ 1746 provides for swearing under the penalty of perjury only in written form.  See 28 U.S.C.

§ 1746; see also Transcript of Hearing, Testimony of Assistant United States Bankruptcy Trustee

Dennis Early, Feb. 7, 2007 at 151:23-152:8 ("Early Testim.").

Count 7 of the indictment specifically alleges that in Item 3a of his Statement of

Financial Affairs, Naegele represented

> [t]hat he had made no payments to creditors aggregating more than
> $600 in the 90 days prior to the filing of the bankruptcy petition
> when, in truth and in fact as he then well knew, he had made
> payments to creditors totaling at least approximately $27,800
> during that 90 day period.

Indictment ¶ 9.

## C.   Trial Exhibit GX1B

Trial in this case was scheduled to begin on January 29, 2007.  On January 16,

2007, the government and the defendant exchanged trial exhibits in compliance with this Court's

scheduling order.  At that time, the government included as proposed trial exhibit GX1B a five-

page copy of defendant's SOFA that forms the basis of the false statement charge in Count 7.

See Defendant's Memorandum of Facts and Law Regarding Potential Grand Jury Violations and

Further Proceedings, Ex. B ("GX1B").[3]  The first page of the SOFA is date stamped as having

been filed on May 4, 2000 in the United States Bankruptcy Court for the District of Columbia, as

alleged in the indictment.  See id. at 1; Indictment ¶ 5.  What the defendant discovered in

reviewing the proposed exhibit, however, was that the last page of the SOFA, containing

defendant's signature and declaration under penalty of perjury as well as Items 19 through 21,

was Bates-stamped "SHER01839."  See GX1B at 5.  It therefore is identifiable as having come

---

[3]        All other remaining 18 U.S.C. § 152(3) counts allege false statements in
defendant's bankruptcy Schedules.  As noted, the other counts of the original indictment alleging
false statements in the SOFA -- Counts 1, 2 and 3 -- already have been dismissed for reasons
unrelated to the motions now before the Court.  See United States v. Naegele, 341 B.R. 349
(D.D.C. 2006).

from the files of Jeffrey Sherman, the bankruptcy attorney who represented the defendant in the underlying bankruptcy proceeding. Documents from Mr. Sherman's files were not produced to the government by Mr. Sherman until January 10, 2007, after Mr. Sherman's assertion of the attorney-client privilege to withhold them was overruled by the Court on January 4, 2007 and he was ordered to produce them. See United States v. Naegele, 468 F. Supp. 2d 165 (D.D.C. 2007).

Counsel for the defendant brought the matter of the government's proposed trial exhibit, GX1B -- containing four pages from the files of the Bankruptcy Court and one from the files of Mr. Sherman -- to the Court's attention on January 19, 2007, three days after defense counsel had received the exhibit. See Defendant's Emergency Motion for Inspection of Grand Jury Minutes and for Dismissal of Count 7 ("Mot. Dism. Ct. 7"). The defendant requested that the Court unseal the grand jury transcripts and minutes to determine how Naegele could have been indicted on the counts alleging violations of 18 U.S.C. § 152(3) relating to the SOFA when the government did not have in its possession the signature page of the SOFA at the time of the grand jury proceedings. Defendant also moved to dismiss Count 7. See id. at 1.

Although it opposed the motion to unseal the grand jury transcript and to dismiss Count 7, the government conceded that at the time the indictment was returned, neither the government nor the grand jury had possession of page 5 of the SOFA, containing the signature portion of the SOFA signed by Naegele. The government also conceded that it had never seen Naegele's signed SOFA signature page until Mr. Sherman produced his files in response to the Court's January 4, 2007 Opinion. The government has produced a copy of Exhibit 10 from the grand jury proceedings, which contains the first four pages of Naegele's SOFA and his bankruptcy Schedules ("GJ Exh. 10"). Included in Grand Jury Exhibit 10 are two copies of the

6

signature page to the bankruptcy Schedules, signed and dated by Naegele on May 3, 2000.

Above Mr. Naegele's signature on each copy are the words, "I declare under penalty of perjury

that I have read the foregoing summary and schedules consisting of 19 sheets, and that they are

true and correct to the best of my knowledge, information and belief."  No SOFA signature page

was discovered in the files of the United States Bankruptcy Court, nor does the government have

any evidence that the signature page in Mr. Sherman's possession (or a copy thereof) was ever

provided to the Bankruptcy Court or any other persons associated with the bankruptcy

proceeding.  See United States' Consolidated Response in Opposition to Defendant's Motion to

Dismiss for Prosecutorial Misconduct and Supplement to Motion to Dismiss Count 7 for Failure

of Proof ("Cons. Opp.") at 11.

   After reviewing the transcripts of the grand jury proceedings *in camera* and after

considering the arguments of both parties, the Court determined that the defendant had

demonstrated particularized need entitling him to review all of the grand jury transcripts and

ordered them produced.  See United States v. Naegele, – F. Supp. 2d –, Crim. No. 05-151, 2007

WL 441912 (D.D.C. Jan. 30, 2007).  The Court also scheduled an evidentiary hearing on the

issue of potential prosecutorial misconduct before the grand jury.  See id. at *4.  As noted, that

hearing was held on February 6 and 7, 2007.  The issues developed there will be dealt with in a

separate opinion.  See supra at 1 n. 1.

### D.  Grand Jury Proceedings Relating to the SOFA

   Assistant United States Bankruptcy Trustee Dennis Early testified before the

grand jury on April 25, 2005 regarding the general workings of the bankruptcy process, as

follows:

> Q.  What kinds of documents does a debtor have to *file* in connection with a Chapter 7 bankruptcy?
>
> A.  The bankruptcy is initiated by the filing of a bankruptcy petition, which is essentially a two-page document that just gives you general information.  Really, the nuts and bolts of *the filing requirement* from a debtor's standpoint is the statement of financial affairs, which is a series of questions that they have to answer that basically details their financial condition in the year leading up to the filing of the bankruptcy.  And then in the schedules the schedules are a number of documents, Schedules A through J, that lists all of your assets and all of your liabilities.  And that is sort of the cornerstone of the bankruptcy system, those schedules, those statements of financial affairs, the petition.

Transcript of Dennis Early Grand Jury Testimony, April 21, 2005 ("Early GJ Trans.") at 6:23-

7:12 (emphases added).

Mr. Early later testified concerning how creditors in a bankruptcy case obtain the

documents related to the bankruptcy case:

> Well, when a bankruptcy case is commenced, I mentioned that all the creditors have to be listed.  They also receive a notice from the bankruptcy court, or the bankruptcy clerk's office that the debtor has filed a bankruptcy case.  And the initial notice basically tells them, you're listed as a creditor;  there's a meeting of creditors that will be held in the case, at which time the debtor will be present and under oath;  you can attend that meeting if you so choose*;  if you want to look at the schedules and statements, they're on file with the bankruptcy clerk's office.  They don't actually get a copy of those documents, but those documents are available to them at the bankruptcy clerk's office.*

Early GJ Trans. at 8:25-9:11 (emphasis added).

Agent Kendra McLamb testified before the grand jury in this case on April 28,

2005.  At that time, the prosecutor presented her with Grand Jury Exhibit 10, consisting of the

first four pages of the SOFA, the Schedules and two copies of the Schedules declaration pages.

The following exchange then occurred:

> Q.  Okay.  Agent McLamb, is Exhibit 10 a group of documents stapled together?
>
> A.  Yes, it is.
>
> Q.  And is one of the documents entitled Statement of Financial Affairs?
>
> A.  Yes.
>
> Q.  And if you flip back a few pages, there's a document with another file stamp on the front of it entitled Summary of Schedules. It's about four or five pages into this group.  Do you see that?
>
> A.  Yes.
>
> Q.  Summary of Schedules?
>
> A.  Yes.
>
> Q.  And from that page on through the back, are those the bankruptcy schedules that are part of the bankruptcy filing?
>
> A.  Yes, they are.
>
> Q.  What is the date stamp on the front of both the Statement of Financial Affairs and the schedules?
>
> A.  May 4th, 2000.
>
> Q.  And if you look to the very back of the package, are there a couple of signature pages with Mr. Naegele's signature on them?
>
> A.  There are.
>
> Q.  And is this a declaration that Mr. Naegele is signing *these documents* under penalty of perjury?
>
> A.  Yes, it is.

> Q.  Okay.  Let's go back to the very first page, Statement of
> Financial Affairs, item number one.
>
> A.  Okay.

Transcript of Kendra McLamb Grand Jury Testimony, April 28, 2005 ("McLamb GJ Trans.") at

7:3-8:7 (emphasis added).

The prosecutor instructed the grand jury on April 28, 2005 regarding the law

governing Counts 1 through 10, by reading the text of the statutes, 18 U.S.C. § 152(2) and 18

U.S.C. § 152(3), and by then stating:

> Now, 152(3) is for the documents that [Naegele] signed under
> penalty of perjury.  152(2) is for the testimony he provided, which
> we're charging is in false oaths or accounts, and you recall from
> the testimony last week that Naegele was placed under oath when
> he testified at his creditors meeting.

Grand Jury Minutes, April 28, 2005 at 2:17-21; see also id. at 2:6-2:16.


### E.  Capone Declaration

At the Court's request, on January 26, 2007 the government submitted a

declaration from the prosecutor who presented this case to the grand jury, Joseph A. Capone

("Capone Decl.").  Mr. Capone declared that:

> At some point prior to the date the Indictment was presented to the
> grand jury on April 28, 2005, I noticed that grand jury exhibit 10
> did not contain a copy of the SOFA signature page.  On or about
> April 21, 2005 I issued a grand jury subpoena to the Bankruptcy
> Court seeking the complete Naegele Bankruptcy Court file.  The
> copies of the Naegele 2000 bankruptcy filings returned by the
> clerk's office contained the SOFA and Schedules, certified as one
> document, with two signature pages at the end.

Capone Decl. ¶ 4.  Mr. Capone further declared that even though the two signature pages were

both captioned "Declaration Concerning Debtor's Schedules," he "did not attribute material legal significance to the lack of a signature page on the SOFA in the Bankruptcy Court file, given that the SOFA and Schedules appeared to have been filed as one, and my understanding that all debtors are required to execute the SOFA and Schedules under penalty of perjury." Id. ¶ 5.

### F. Evidentiary Hearing

The Court held an evidentiary hearing on February 6 and 7, 2007.  The witnesses were Jeffrey Sherman, defendant Naegele's bankruptcy counsel; Wendell Webster, the panel trustee who administered defendant's underlying bankruptcy proceeding; Joseph Capone, the prosecutor who presented the case to the grand jury; Kendra McLamb, the FBI case agent who testified before the grand jury; and Dennis Early, Assistant United States Bankruptcy Trustee.[4]

With respect to the SOFA, Mr. Early testified at the evidentiary hearing as follows:

> Q:  Okay.  Now, as you've testified, the SOFA signature page applies only to the SOFA, right?
>
> A.   That's correct.
>
> Q.  And the Schedules signature page applies only to the Schedules, correct?
>
> A.  Correct.

Early Testim. at 167:11-16.   He further testified:

> Q.   If someone were to ask you that question at any point in time, does the signatures page from the debtor's Schedules attest to the

---

[4]      Mr. Early testified that he consulted with the prosecutor and the case agent in this case during the course of their investigation when they had questions about the bankruptcy process.  See Early Testim. at 159:20-160:4.

Statement of Financial Affairs, your answer would be no, correct?

A.   Yeah, they're separate documents.

Q.   Separate documents, separately attested to under penalty of perjury, correct?

A.   That's correct.

Q.   And that's what you would have explained to anyone who asked you that question, correct?

A.   That's correct.

Early Testim. at 162:14-24.

Mr. Sherman testified at some length concerning both his general practice in making filings in bankruptcy matters and, to the best of his recollection, what he and his staff did in this case.  With respect to the events surrounding the filing of Mr. Naegele's Statement of Financial Affairs and Schedules by Mr. Sherman, the defense has usefully and accurately summarized what can be determined from the evidentiary hearing:

> Mr. Sherman's testimony, together with the fax stamps that appear on the various copies of the SOFA and Schedules, now make it possible to understand with reasonable confidence the time-line of events leading up to the filing of defendant's SOFA and Schedules. On May 3, 2000, at 12:10 a.m. EST, Mr. Sherman, who was in Washington, D.C., faxed completed versions of the SOFA and the Schedules to defendant, in California. (Feb. 6 Tr. at 22:21-23.) The fax consisted of at least 26 pages — a coversheet; twenty pages for the Schedules (19 pages and the declaration); and five pages for the SOFA. (*See* SHER01864 (Exhibit A) (showing that the attestation for the SOFA was page 26 in a fax sent from Mr. Sherman's firm, O'Rourke and Cundra, at 12:10 on 05/03/2000); SHER01859 (Exhibit B) (showing that the declaration for the Schedules was page 21 in the same set).) Because of the time difference, it would have been 9:10 p.m. on May 2 in California.

About an hour later, defendant returned the executed signature pages via fax. It was 10:21 p.m. PCT on May 2 in California. On the East Coast, it was 1:21 a.m. on May 3. The fax was three pages — a coversheet; the fifth page of the SOFA, which includes that attestation; and the declaration for the Schedules. (See SHER01786 (Exhibit C) (coversheet for return fax); Ex. A.; Ex. B).) Defendant then apparently returned the originals to Mr. Sherman via FedEx. (Ex. C; Feb. 6 Tr. at 82:6-9.)

Mr. Sherman waited to receive the original signatures [by Federal Express] before filing. Somehow, both the original of the declaration for the Schedules and a faxed-in copy were filed with the Bankruptcy Court. These are the documents that appear today in the Bankruptcy Court's file, and that were reproduced in Grand Jury Exhibit 10 and later in Government Trial Exhibit 1C ("GX 1C"). If an executed attestation for the SOFA was included in any of the several copies of the SOFA that were delivered to the Bankruptcy Court (*see* Feb. 6 Tr. at 33:15-18), it apparently was not included in the copy that was retained by the Court for its own files.

Defendant's Supplement to his Motion to Dismiss Count 7 for Failure of Proof ("Def. Supp. Mot.") at 2-3 (footnotes omitted).

The government does not appear to disagree with this recital of the facts.  For example, the government agrees that the "stamp-and-return copy did not include the SOFA signature page" and that "the SOFA signature page was not filed with the Bankruptcy Court." Cons. Opp. at 11.  "Someone in Mr. Sherman's office must have mistakenly replaced the signed SOFA signature page with the faxed copy of the Schedules signature page."  Id.

## II.  DISCUSSION

The defendant has moved to dismiss Count 7 of the indictment on the ground that the filing of the SOFA signature page with the United States Bankruptcy Court is a necessary element of the offense charged in Count 7 under 18 U.S.C. § 152(3), see Def. Supp. Mot. at 1, or,

alternatively, that the requirement of a filing, though not express, is "subsumed within one of the

recognized elements."  Defendant's Response to the Court's Order Requesting Supplemental

Authority on the Motion to Dismiss Count 7 ("Def. Supp. Auth.") at 1.  The government opposes

dismissal of Count 7, arguing that the indictment is facially valid and that filing the signature

page is not a required element of 18 U.S.C. § 152(3), because neither the word "filing" nor its

functional equivalent is found anywhere in the statute's plain language.  See United States'

Response in Opposition to Defense Motion for Inspection of Grand Jury Minutes and to Dismiss

Count 7 ("Opp.") at 4.[5]  It seeks to buttress this assertion by citing to the jury instructions

proposed for use at trial in this case by both the government and the defendant; neither proposal

explicitly states that a false statement or declaration must be "filed" with the United States

Bankruptcy Court.  See id.  The government also emphasizes that the SOFA was in fact signed

by Mr. Naegele under penalty of perjury and discovered later in Mr. Sherman's office files.  See

Cons. Opp. at 11.[6]

To be convicted of violating 18 U.S.C. § 152(3), a defendant must be found to

have made a false statement or declaration under penalty of perjury "in or in relation to" a

bankruptcy proceeding.  See 18 U.S.C. § 152(3);  see also Government's Proposed Jury

Instructions at 36;  Defendant's Proposed Jury Instructions at 24.  For the reasons that follow, the

Court concludes that a declaration made under penalty of perjury that is sitting in a debtor's files

---

[5]  Curiously, the government concedes that "realistically, the bankruptcy document containing the false statement itself must be filed," Opp. at 4, while at the same time maintaining that the signature page need not be filed.

[6]  The Court notes, however, that the government had absolutely no evidence of that fact until January 10, 2007.

or (as in this case) in the files of a debtor's attorney -- and is *not* in the possession of the Bankruptcy Court and is not otherwise available to the trustee and the creditors -- cannot be said to contain statements that have been made under penalty of perjury "in or in relation to" a bankruptcy proceeding within the meaning of the statute.

### A.   Filing as an Element of Count 7

The defendant argues that "the crime of making a false statement under 18 U.S.C. § 152(3) is completed only when the debtor actually *files*, under penalty of perjury, a document containing information that the debtor knows is fraudulent."  Mot. Dism. Ct. 7 at 5 (emphasis added).  The government responds that filing cannot be an element of the crime that must be proved because the word "file" or "filing" is not found anywhere in the plain language of the statute.  See Opp. at 4.  The government's plain language argument, however, cannot be dispositive of the issue presented; the element of materiality is similarly not stated in the words of the statute, but it has been judicially inferred and accepted as necessary to a finding of guilt under 18 U.S.C. § 152.  See, e.g., United States v. Gellene, 182 F.3d 578, 587 (7th Cir. 1999) ("§ 152 requires that materiality be an element of the crime of bankruptcy fraud").  What is clear from the plain language of the statute is that the alleged false sworn statement must be one that is made "in or in relation to" a bankruptcy proceeding.  The question here is whether the act of signing a declaration under penalty of perjury alone satisfies the "in or in relation to" requirement, even if the signed document sits in a lawyer's files and is seen by no one other than the lawyer and his staff throughout the bankruptcy proceeding.

In most cases, as Dennis Early explained, for a statement to be made "in or in relation to" a bankruptcy proceeding, the allegedly false statement or declaration would have to be filed, and it typically is filed.  As described by Mr. Early, a bankruptcy proceeding begins with the debtor filing a petition with the Bankruptcy Court.  Thereafter, the debtor also files his SOFA and his Schedules with the Court, and his creditors are notified that the filings have been made.  See Early GJ Trans. 8:25-9:11.  The creditors then can view or obtain copies of the SOFA and Schedules from the files of the Bankruptcy Court for use at the creditors' meeting, where the debtor must answer questions under oath.  Id. at 9:16-10:9.  Indeed, since the only information the trustee and the creditors typically have about the debtor's assets is found in the SOFA and the Schedules, those documents serve as the road map for questioning the debtor at the creditors' meeting.  In the typical case, therefore, all the relevant bankruptcy documents have been obtained from the debtor's *filings* with the Bankruptcy Court.

One can, however, contemplate alternative scenarios in which documents not formally "filed" with the Court could still contain false statements made "in or in relation to" a bankruptcy proceeding within the meaning of 18 U.S.C. § 152(3).  For instance, if Mr. Naegele had mailed, or had his lawyer mailed, copies of the signed and sworn SOFA directly to the trustee or to his creditors, or had Mr. Naegele brought copies of the signed and sworn SOFA to the creditors' meeting and used it during that proceeding (even though he had not properly filed it with the court), or had he brought an amended or revised signed SOFA to the meeting and asked that it be substituted for the filed, unsigned version, that certainly would fit the definition of a sworn statement having been made "in or in relation to" the bankruptcy proceeding.  See United States v. Sorenson, 179 F.3d 823, 827 (9th Cir. 1999) (an unsigned loan application was not a

16

false statement under 18 U.S.C. § 1014 because the defendant's "actions never matured into a violation [] because he did not submit an application upon which the [lender] could have granted a loan."). These examples of the rare or unusual situation suggest that it would do damage to the intent of the statute for the Court to limit its interpretation of the statute to require a filing with the Bankruptcy Court in all cases for there to be a violation, as defendant argues.

In this case, however, the SOFA was filed, but its signature page was not. Yet the grand jury heard evidence not only that the SOFA is typically filed with the Bankruptcy Court, see Early GJ Trans. at 8:25-9:11, but also that there were "a couple of signature pages with Mr. Naegele's signature on them" on file with the Schedules and the SOFA, and that "this is a declaration that Mr. Naegele is signing these documents under penalty of perjury." McLamb GJ Trans. at 7:23-8:4. From this, the grand jury must have concluded that the allegedly false statements contained in the SOFA were made under penalty of perjury "in or in relation to" the bankruptcy proceeding, a necessary element of 18 U.S.C. § 152(3). The indictment clearly alleges that Naegele's SOFA was "filed in the United States Bankruptcy Court in the District of Columbia," Indictment ¶ 9, and that "[a]s part of his bankruptcy, on or about May 4, 2000, defendant Timothy D. Naegele filed a Statement of Financial Affairs . . . which he signed as true and correct, under penalty of perjury." Id. ¶ 5. Furthermore, Count 7 alleges that Naegele represented in Item 3a of the SOFA that "he had made no payments to creditors aggregating more than $600 in the 90 days prior to the filing of the bankruptcy petition when, in truth and in fact as he then well knew, he had made payments to creditors totaling at least approximately $27,800 during that 90 day period." Id. at 4 (Count 7). There is no evidence that the Bankruptcy Court,

the trustee or the creditors could have relied on this allegedly perjurious statement in connection with the bankruptcy proceeding but for its having been filed with the Court.

Furthermore, Naegele's signed SOFA signature page, later located in Mr. Sherman's files, is dated May 3, 2000, whereas the indictment alleges that Naegele made the false statement or declaration in his SOFA "[o]n or about May 4, 2000," the date that the incomplete SOFA and the complete Schedules were filed with the Bankruptcy Court.  While the "on or about" language is permissibly flexible, see, e.g., Ledbetter v. United States, 170 U.S. 606, 612 (1898), here the indictment itself refers to the date of the *filing* of the document, rather than its *execution*.  Hypotheticals aside, then, the grand jury in this case found that the filing on May 4, 2000 was the operative act, taken "in or in relation to" the bankruptcy proceeding, and the government -- if it must prove at trial what the grand jury charged in the indictment -- would have to prove a filing under penalty of perjury which it now concedes it cannot do.  See infra at 23.

The government nevertheless maintains that the crime was completed on May 3, 2000, when Mr. Naegele signed the SOFA signature page later found in his lawyer's office, declaring "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and attachments thereto and that they are true and correct to the best of my knowledge , information, and belief" -- even though the signed SOFA page was never presented to the grand jury and was in Mr. Sherman's files at the time the grand jury returned its indictment.  Indeed, as the government concedes, the signature page of the SOFA and the fact of its existence did not come into the government's possession until January 10, 2007, nearly two years after the grand jury indicted Mr. Naegele.  See Capone Decl. ¶¶ 4-5.  Even Mr.

Sherman did not realize that the signed SOFA signature page was sitting undisturbed in his files for two years after the bankruptcy filings and the creditors' meeting.  See Transcript of Hearing, Testimony of Jeffrey Sherman, Feb. 7, 2007 ("Sherman Testim.") at 57:17-21.  It was never seen by anyone other than Naegele (when he mailed it to Sherman), Sherman (when he received it), and Sherman's staff.  If the Clerk of the Bankruptcy Court, the Bankruptcy Judge, the trustee or the creditors never saw or relied upon the signed SOFA signature page, the statements in the SOFA could not have been made under penalty of perjury "in or in relation to" the bankruptcy proceeding.

A statement or declaration necessarily is made "in or in relation to any case under Title 11," 18 U.S.C. § 152(3), when it is filed, submitted or presented to the relevant players in the bankruptcy proceeding -- to the judge or the clerk of court, or to the trustee or creditors who rely on it in their examination of the debtor at the creditors' meeting.  The phrase "in relation to," while broader than the more direct "in," would seem to encompass only the kind of scenario described by Mr. Early respecting how the creditors and trustee obtain the documents from the Clerk's Office after they are filed, or, perhaps, in the scenarios hypothesized by the Court above. See supra at 16-17.  As Mr. Early testified, the relevant documents -- the petition, the Schedules and the SOFA -- are "on file with the bankruptcy clerk's office" for the trustee and creditors to look at; "[t]hey don't actually get a copy of those documents, but those documents are available to them at the bankruptcy clerk's office."  Early GJ Trans. at 8:25-9:11.  Under no construction of the term "in or in relation to" could it be that simply signing a document and putting the signature page in one's files or a lawyer's files would constitute the submission, presentation or use of it "in or in relation to" a bankruptcy proceeding.

19

Consider the following hypothetical: A debtor about to take a flight to London the day before his SOFA and Schedules must be filed signs the declaration pages to his SOFA and his Schedules in blank and leaves them with his lawyer.  He takes the penultimate drafts of the Schedules and the SOFA with him to review on the plane.  He calls his lawyer when he arrives in London and instructs him to make various changes in the drafts before filing the SOFA and the Schedules.  The lawyer makes the changes, collates the revised pages with the previously signed signature pages, and files the documents with the Court.  Only at that point are the statements to which the signature pages attest made or used "in or in relation to" a bankruptcy proceeding.  The debtor can continue to make changes until the completed documents actually are filed or otherwise submitted or used in connection with the bankruptcy proceeding.  The signature page in the lawyer's office is evidence of nothing before that point in time.  In the real world, lawyers and their clients operate this way all the time, signing blank signature pages to partnership agreements, corporate documents, and the like -- which are then kept for safekeeping in the lawyer's office until the client authorizes their use, presentation or filing.  Indeed, until confronted with the fax sheets and other exhibits at the evidentiary hearing, that is precisely what Mr. Sherman thought had occurred in this case.[7]  The Court therefore holds as a matter of law that the last page of the SOFA had to be filed or otherwise presented or used in relation to the bankruptcy proceeding in order for a crime to have been committed under 18 U.S.C. § 152(3).

---

[7]    Compare Sherman Testim. at 19:1-21:4 (Mr. Sherman at first testified that Mr. Naegele signed the signature pages in blank and sent them to Mr. Sherman before the forms had been finalized.)  with Sherman Testim. at 63:6-16 (The Court asked "do you know whether you made any changes after you received the signature pages?" and Mr. Sherman testified "I do not believe that I did.").

The government separately argues that if the Court requires that the SOFA signature page be filed or affirmatively used, it is permitting Naegele to get away with making the (alleged) false statements in the first four pages of his SOFA, which were in fact filed. See United States' Response to the Court's Order Requesting Supplemental Authority on the Motion to Dismiss Count 7 ("Govt. Supp. Auth.") at 4.  The government maintains that it had adequate grounds for the indictment even without the missing fifth page of the SOFA, because the alleged false statements are contained in the earlier pages that were filed.  The government, however, is ignoring the fact that Section 152(3) is not a false statements statute like 18 U.S.C. § 1001; it is a *sworn* false statements statute.  The statute requires that in order to complete the crime, the false statement in question must be sworn to.  See In re Daly, 344 B.R. 304, 310 (Bankr. M.D. Pa 2005) ("inclusion of . . . signatures [on schedules] is essential to the judicial process").  The crime cannot have been completed where the court (or the creditors or trustee or other officers of the court who are related to the proceeding) had not obtained the page with the debtor's declaration signed under penalty of perjury.  Cf. United States v. Young, 339 F.2d 1003, 1004 (7th Cir. 1964) ("The offenses making the false oaths [as to schedules] were completed when the knowingly false schedules were sworn to and *filed*.") (emphasis added); United States v. Overmyer, 867 F.2d 937, 949 (6th Cir. 1989) ("The gist of the offense . . . is whether a false claim was filed."); In re Chadwick, 335 B.R. 694, 702 (W.D. Wis. 2005) ("The offense of making a false oath is complete when a knowingly false schedule is sworn to and filed and the offense is not expunged by recanting.").

The government's original argument that the duplicate Schedules signature pages filed with the Schedules can be attributed to the SOFA merely because the documents were

stapled together by the Clerk's Office and later certified as a single document is similarly

unavailing, as well as plainly illogical.[8]  The Schedules signature page is a separate page in a

separate document that has nothing to do with the SOFA.  See In re Jolly, 313 B.R. 295, 300

(Bankr. S.D. Iowa 2004) ("the petition, the schedules, and the various statements constitute

separate documents"); see also Early Testim. at 162:14-24.  Furthermore, the Schedules signature

page states in explicit terms that it applies only to *"the foregoing summary and schedules*,

consisting of ___ sheets." Declaration Concerning Debtor's Schedules (emphasis added).  In the

case of Naegele's Schedules signature page, the blank in that line was filled in by hand

(apparently by Mr. Naegele after crossing out the typed number "18") to say that the document

consisted of "19 sheets," which is exactly the number of pages of his Schedules, *not* including

the four pages of the SOFA stapled to the front.  The Court cannot ignore the plain language of a

sworn statement in a criminal matter.

### *B.   Facial Validity of the Indictment*

The government also relies on established law that the Court ought not look

beyond the face of the indictment and its presumptive validity to determine whether a crime has

been properly charged by the grand jury.  The government is right, of course, that "[a]n

indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is

enough to call for trial of the charge on the merits."  Costello v. United States, 350 U.S. 359, 363

(1956); see United States v. Conlon, 628 F.2d 150, 155-56 (D.C. Cir. 1980), cert. denied, 454

---

[8]        The SOFA and the Schedules were separately file-stamped and were given
separate docket entries by the Clerk of the Bankruptcy Court.  Furthermore, the government now
acknowledges that "presenting both documents in a single, composite exhibit was a mistake."
Opp. at 2.

U.S. 1149 (1982).  The government therefore "is usually entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal under Rule 29." United States v. Yakou, 428 F.3d 241, 247 (D.C. Cir. 2005).  Only in "unusual circumstance[s]" is pretrial dismissal of the indictment possible on sufficiency-of-the-evidence grounds, and that is "where there are material facts that are undisputed and only an issue of law is presented."  Id. (discussing case law in sister circuits, some of which have upheld the pretrial dismissal of an indictment based on sufficiency of the evidence "where the government has made a full proffer of evidence or where there is a stipulated record").

        The Court finds itself presented with the "unusual circumstance" in this case to which the Circuit referred in Yakou.  Whether the SOFA signature page was ever filed is clearly a material fact, as is evidenced by the foregoing analysis and by the allegations in the grand jury indictment, which itself states that Naegele violated 18 U.S.C. § 152(3) because he made a false statement in "his Statement of Financial Affairs . . . *filed in the United States Bankruptcy Court in the District of Columbia*."  Indictment ¶ 9 (emphasis added).  The government now has conceded that the SOFA signature page was never presented to the grand jury and that it has no evidence that the signature page swearing to the SOFA ever was filed with the Bankruptcy Court. See January 26, 2007 Transcript at 23:19-23; Cons. Opp. at 11.  Indeed, during oral argument on April 5, 2007, the government agreed that if the Court concluded that the filing of the SOFA signature page was a necessary element to convict the defendant under Count 7 of the indictment, the Court should dismiss Count 7 before trial, and should not wait for the Rule 29 stage.

        Since it is conceded that the signed signature page of the Statement of Financial Affairs was never filed with the Bankruptcy Court and remained in Mr. Sherman's office files,

and therefore was never seen, presented to, used or relied upon by the Bankruptcy Judge or clerk

of the court, or by the trustee or the creditors, in connection with Mr. Naegele's bankruptcy

proceeding, the Court concludes that the allegedly false statement was not made "in or in relation

to" a bankruptcy proceeding within the meaning of 18 U.S.C. § 152(3).  The Court therefore will

dismiss Count 7 of the indictment.[9]  A separate Order to this effect will be issued this same day.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 18, 2007

---

[9]      Had the Court not already dismissed Counts 1, 2 and 3 of the indictment on
unrelated grounds, it would do so now for the same reasons that it is dismissing Count 7.