UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 05-0151 (PLF) |
| | ) | |
| TIMOTHY D. NAEGELE, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the Court on defendant's motion to dismiss the indictment for misconduct by the prosecution. Upon careful consideration of the entire record in this case, the Court will deny the motion.

I.  BACKGROUND

Defendant Timothy Naegele is an attorney licensed to practice law in California and in the District of Columbia. Naegele owns his own law firm as a sole proprietorship. On or about March 29, 2000, Naegele filed a Chapter 7 petition for personal bankruptcy in the United States Bankruptcy Court for the District of Columbia. See In re Naegele, Case No. 00-0601 (Bankr. D.C. 2000). On April 28, 2005, a federal grand jury returned an eleven-count indictment against Naegele, alleging that he had made numerous misstatements on his bankruptcy forms and in the creditors' meeting, and charging him with ten counts of making false statements under 18 U.S.C. § 152 and one count of bankruptcy fraud under 18 U.S.C. § 157.

On May 2, 2006, the Court dismissed Counts 1, 2, 3, and 9 of the indictment. See United States v. Naegele, 341 B.R. 349 (D.D.C. 2006). The Court declined to dismiss Counts 4

and 11 of the indictment. See id. On July 18, 2006, the Court declined to dismiss Counts 5, 8 and 11 of the indictment. See July 18, 2006 Memorandum Opinion and Order. In a separate Opinion and Order issued this same day, the Court dismissed Count 7 of the indictment. The only remaining counts, therefore, are Counts 4, 5, 6, 8, 10 and 11.

Trial in this case was scheduled to begin on January 29, 2007. On January 16, 2007, the government and the defendant exchanged trial exhibits in compliance with this Court's scheduling order. At that time, the government included as proposed trial exhibit GX1B a five-page copy of defendant's Statement of Financial Affairs ("SOFA") that forms the basis of the false statements charged in Counts 1, 2, 3 and 7. See Defendant's Memorandum of Facts and Law Regarding Potential Grand Jury Violations and Further Proceedings, Ex. B ("GX1B"). The first page of the SOFA is date stamped as having been filed on May 4, 2000 in the United States Bankruptcy Court for the District of Columbia, as alleged in the indictment. See id. at 1; Indictment ¶ 5. What the defendant discovered in reviewing the proposed exhibit, however, was that the last page of the SOFA, containing defendant's signature and declaration under penalty of perjury as well as questions 19 through 21 of the SOFA, was Bates-stamped "SHER01839." See GX1B at 5. It therefore is identifiable as having come from the files of Jeffrey Sherman, the bankruptcy attorney who represented the defendant in the underlying bankruptcy proceeding. Documents from Mr. Sherman's files were only produced to the government on January 10, 2007, after Mr. Sherman's assertion of the attorney-client privilege to withhold them was overruled by the Court on January 4, 2007 and he was ordered to produce them. See United States v. Naegele, 468 F. Supp. 2d 165 (D.D.C. 2007).

Counsel for the defendant brought the matter of the government's proposed trial exhibit, GX1B -- containing four pages from the files of the Bankruptcy Court and one from the files of Mr. Sherman -- to the Court's attention on January 19, 2007, three days after defense counsel had received the exhibit.  See Emergency Motion to Dismiss Count 7 and for Inspection of Grand Jury Minutes ("Mot. Dism. Ct. 7").  The defendant requested that the Court unseal the grand jury transcripts and minutes to determine how Naegele could have been indicted on the counts alleging violations of 18 U.S.C. § 152(3) by filing a SOFA that contained false statements when the government did not have in its possession the signed signature page of the SOFA at the time of the grand jury proceedings.  See id. at 1.

Although it opposed the motion to unseal the grand jury transcript and to dismiss Count 7, the government conceded that at the time the indictment was returned, neither the government nor the grand jury had possession of page 5 of the SOFA, containing the signature portion of the SOFA signed by Naegele.  The government also conceded that it had never seen Naegele's signed SOFA signature page until Mr. Sherman produced his files in response to the Court's January 4, 2007 Opinion.  The government has produced a copy of Exhibit 10 from the grand jury proceedings, which contains the first four pages of Naegele's SOFA and his bankruptcy Schedules ("GJ Exh. 10").  Included in Grand Jury Exhibit 10 are two copies of the signature page to the bankruptcy Schedules, signed and dated by Naegele on May 3, 2000.  Above Mr. Naegele's signature on each copy are the words, "I declare under penalty of perjury that I have read the foregoing summary and schedules consisting of 19 sheets, and that they are true and correct to the best of my knowledge, information and belief."  No SOFA signature page was discovered in the files of the United States Bankruptcy Court, nor does the government have

any evidence that the signature page in Mr. Sherman's possession (or a copy thereof) was ever provided to the Bankruptcy Court or any other persons associated with the bankruptcy proceeding. See United States' Consolidated Response in Opposition to Defendant's Motion to Dismiss for Prosecutorial Misconduct and Supplement to Motion to Dismiss Count 7 for Failure of Proof ("Cons. Opp.") at 11.

After reviewing the transcripts of the grand jury proceedings *in camera* and after considering the arguments of both parties, the Court determined that the defendant had demonstrated particularized need entitling him to review all of the grand jury transcripts and ordered them produced. See United States v. Naegele, – F. Supp. 2d –, Crim. No. 05-151, 2007 WL 441912 (D.D.C. Jan. 30, 2007). The Court also scheduled an evidentiary hearing on the issue of potential prosecutorial misconduct before the grand jury. See id. at * 4. That hearing was held on February 6 and 7, 2007.

With respect to the SOFA and Grand Jury Exhibit 10, FBI Agent Kendra McLamb testified before the grand jury on April 28, 2005. At that time, the prosecutor presented her with Grand Jury Exhibit 10, consisting of the first four pages of the SOFA, the Schedules, and two copies of the signature or declaration page for the Schedules. The following exchange then occurred:

> Q. Okay. Agent McLamb, is Exhibit 10 a group of documents stapled together?
>
> A. Yes, it is.
>
> Q. And is one of the documents entitled Statement of Financial Affairs?
>
> A. Yes.

>Q. And if you flip back a few pages, there's a document with another file stamp on the front of it entitled Summary of Schedules. It's about four or five pages into this group. Do you see that?
>
>A. Yes.
>
>Q. Summary of Schedules?
>
>A. Yes.
>
>Q. And from that page on through the back, are those the bankruptcy schedules that are part of the bankruptcy filing?
>
>A. Yes, they are.
>
>Q. What is the date stamp on the front of both the Statement of Financial Affairs and the schedules?
>
>A. May 4th, 2000.
>
>Q. And if you look to the very back of the package, are there a couple of signature pages with Mr. Naegele's signature on them?
>
>A. There are.
>
>Q. And is this a declaration that Mr. Naegele is signing *these documents* under penalty of perjury?
>
>A. Yes, it is.
>
>Q. Okay. Let's go back to the very first page, Statement of Financial Affairs, item number one.
>
>A. Okay.

April 28, 2005 Grand Jury Testimony of Kendra McLamb at 7:3-8:7 (emphasis added).

The prosecutor instructed the grand jury on April 28, 2005 regarding Counts 1 through 10, by reading the text of the statutes 18 U.S.C. § 152(2) and 152(3), and then stating:

>Now, 152(3) is for the documents that [Naegele] signed under penalty of perjury. 152(2) is for the testimony he provided, which

>we're charging is in false oaths or accounts, and you recall from
>the testimony last week that Naegele was placed under oath when
>he testified at his creditors meeting."

April 28, 2005 Grand Jury Minutes at 2:17-21.

At the Court's request, on January 26, 2007 the government submitted a declaration from the prosecutor who presented this case to the grand jury, Joseph A. Capone ("Capone Decl."). Mr. Capone declared:

>At some point prior to the date the Indictment was presented to the
>grand jury on April 28, 2005, I noticed that grand jury exhibit 10
>did not contain a copy of the SOFA signature page.  On or about
>April 21, 2005 I issued a grand jury subpoena to the Bankruptcy
>Court seeking the complete Naegele Bankruptcy Court file.  The
>copies of the Naegele 2000 bankruptcy filings returned by the
>clerk's office contained the SOFA and Schedules, certified as one
>document, with two signature pages at the end.

Capone Decl. ¶ 4. Mr. Capone further declared that even though the two signature pages were both captioned "Declaration Concerning Debtor's Schedules," he "did not attribute material legal significance to the lack of a signature page on the SOFA in the Bankruptcy Court file, given that the SOFA and Schedules appeared to have been filed as one, and my understanding that all debtors are required to execute the SOFA and Schedules under penalty of perjury." Id. ¶ 5.

The Court held an evidentiary hearing on February 6 and 7, 2007. The witnesses were Jeffrey Sherman, defendant Naegele's bankruptcy counsel; Wendell Webster, the panel trustee who administered defendant's underlying bankruptcy proceeding; Joseph Capone, the prosecutor who presented this case to the grand jury; Kendra McLamb, the FBI case agent who testified before the grand jury; and Dennis Early, Assistant United States Bankruptcy Trustee.[1]

---

[1] Mr. Early testified that he consulted with the prosecutor and the case agent in this case during their investigation when they had questions about the bankruptcy process. See

On February 27, 2007, defendant filed a Supplement to his Motion to Dismiss Count 7 for Failure of Proof and a Motion to Dismiss the Indictment for Misconduct by the Prosecution ("Mot. Dism. Ind.").[2]  The motion was fully briefed and the Court heard oral argument on April 5, 2007.

## II.  DISCUSSION

In his motion to dismiss the indictment, the defendant argues that "the prosecutor knowingly presented false testimony to the grand jury," Mot. Dism. Ind. at 30-38, either intentionally or "through conscious indifference to the truth." Id. at 36-37.  Defendant's second primary argument is that "at a bare minimum, the prosecutor knowingly misled the grand jury regarding the evidence available." Id. at 38-42.  The government responds that the "extraordinary two-day evidentiary hearing held in connection with the defense's allegations of prosecutorial misconduct before the grand jury established beyond cavil that there was no perjured testimony before the grand jury, the prosecutor acted in good faith, and the Indictment was validly returned." Cons. Opp. at 1.

While both the government and the defendant begin their analysis with the Supreme Court's decision in Bank of Nova Scotia v. United States, 487 U.S. 250 (1988), they disagree with respect to whether the Court needs to find that the government *intentionally* presented false or misleading testimony to the grand jury in order for the Court to grant

---

Transcript of Hearing, Testimony of Assistant United States Bankruptcy Trustee Dennis Early, Feb. 7, 2007 at 159:20-160:4.

    [2]    The Court granted defendant's Motion to Dismiss Count 7 by an Opinion and Order issued this same day.

defendant's motion to dismiss. Compare Mot. Dism. Ind. at 39-40 with Cons. Opp. at 15. For example, the defendant relies on United States v. Feurtado, 191 F.3d 420 (4th Cir. 1999), in which the Fourth Circuit upheld the district court's decision to dismiss an indictment after finding that the grand jury might have been influenced by *unintentional* prosecutorial misconduct. See id. at 424-25.[3] The Fourth Circuit upheld the actions of the district court as being free from error, and, alternatively, held that any error was harmless. See id. at 425; see also United States v. Leeper, Criminal No. 06-58A, 2006 WL 1455485, at * 5 (W.D.N.Y. May 22, 2006) (dismissing indictment without prejudice and noting that "nothing in this Decision and Order is meant to suggest that the Court believes that the government attorneys were acting in bad faith.").

The government relies on United States v. Strouse, 286 F.3d 767 (5th Cir. 2002), in which a key witness perjured himself before the grand jury, and the district court dismissed the indictment without prejudice. The Fifth Circuit, reversing, observed that "we have authority to enforce the Grand Jury Clause by ensuring that grand juries act independently from the executive." Id. at 771. "That said, we are persuaded that perjury before the grand jury that was not knowingly sponsored by the government may not form the basis for a district court's dismissal of an indictment under its supervisory power." Id. at 772. "In the absence of a finding of government misconduct, we hold that the district court was without supervisory power to dismiss the indictment on the basis of perjury before the grand jury." Id.

---

[3] The indictment was dismissed without prejudice. Another grand jury was convened, it issued an indictment free of taint, and the defendants were tried. See United States v. Feurtado, 191 F.3d at 425.

In Bank of Nova Scotia v. United States, 487 U.S. 250 (1988), the Supreme Court held that "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." Id. at 254; see also United States v. Soberon, 929 F.2d 935, 940 (3d Cir. 1991) ("We hold that the presentation of the allegedly perjured testimony to the grand jury does not fall into the narrow category of cases in which dismissal of charges without a showing of prejudice is warranted"). The Court explained what "prejudice" means in this context: "Dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. at 256 (internal quotations and citations omitted).

Four of the eleven counts in the indictment in this case were based on defendant's Statement of Financial Affairs, which was the subject of Agent McLamb's controversial testimony before the grand jury. Each of those counts – Counts 1, 2, 3, and 7 – has been dismissed by this Court on legal grounds. See United States v. Naegele, 341 B.R. 349; April 18, 2007 Opinion and Order. There therefore is no reason for the Court to make a finding on whether the grand jury was intentionally misled about the SOFA and its signature page by Mr. Capone or by Agent McLamb's testimony or to consider how Bank of Nova Scotia would apply if it had been.

The only remaining count of the indictment that involves or even mentions the Statement of Financial Affairs is Count 11, which charges the defendant with a bankruptcy scheme to defraud in violation of 18 U.S.C. § 157. See Indictment at 5-7. In addition to the SOFA, Count 11 also mentions defendant's bankruptcy petition, his bankruptcy Schedules, his

law firm bills, and his testimony at the creditors' meeting in his bankruptcy proceeding.  In light of the breadth of evidence presented to the grand jury and upon which Count 11 rests, the Court cannot conclude that "it is established that the [alleged] violation [the McLamb testimony concerning the SOFA] substantially influenced the grand jury's decision to indict [with respect to the surviving counts of the indictment], or [that] there is grave doubt that the decision to indict was free from the substantial influence of such violations."  Bank of Nova Scotia v. United States, 487 U.S. at 256 (internal quotations and citations omitted).[4]

There also is no basis to believe that the defendant suffered any prejudice with respect to the remaining counts of the indictment that are wholly unrelated to the SOFA – Counts 4, 5, 6, 8 and 10.  All of the cases but one cited by the defendant in support of his proposal that the entire indictment should be dismissed as a "sanction" against the government pre-date the Supreme Court's decision in Bank of Nova Scotia.  See Mot. Dism. Ind. at 61-63.  As the Supreme Court now has made clear, however, prejudice is required for dismissal.  See Bank of Nova Scotia v. United States, 487 U.S. at 263 ("We conclude that the District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct.").  There was nothing about Agent McLamb's testimony regarding the SOFA that would infringe upon the grand jury's "ability to exercise independent judgment" with respect to the evidence concerning Counts 4, 5, 6, 8, and 10, whose charges have nothing to do with the SOFA.  Id. at 259-60.

---

[4]  The government represented in open court on at least one occasion that if the Court dismissed Count 7, as it now has done, the government would not seek to use the SOFA at trial.

For all of these reasons, defendant's motion to dismiss the indictment [216] is DENIED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 18, 2007