UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 05-0151 (PLF) |
| TIMOTHY D. NAEGELE, | ) ) ) | |
| Defendant. | ) ) | |

OPINION

This matter is before the Court on defendant Timothy D. Naegele's motion for judgment of acquittal on the two remaining counts of the indictment, Counts 5 and 8, under Rule 29 of the Federal Rules of Criminal Procedure. Upon careful consideration of the legal arguments presented by counsel, orally and in their written submissions, and the record of the trial in this case, the Court will grant the motion.

I.   BACKGROUND

Defendant Timothy Naegele is an attorney licensed to practice law in California and in the District of Columbia. Naegele owns his own law firm as a sole proprietorship. On or about March 29, 2000, Naegele filed a Chapter 7 petition for personal bankruptcy in the United States Bankruptcy Court for the District of Columbia. See In re Naegele, Case No. 00-0601 (Bankr. D.C. 2000). On or about May 4, 2000, he filed with the Bankruptcy Court additional documents relating to his bankruptcy case.

On May 23, 2000, the bankruptcy trustee conducted a creditors' meeting pursuant to 11 U.S.C. § 341, at which Naegele was questioned under oath by the trustee and several

creditors about the information provided in the documents filed with the Bankruptcy Court and about his financial situation in general. On September 5, 2000, the Bankruptcy Court granted Naegele a discharge from bankruptcy under 11 U.S.C. § 727. The bankruptcy case was closed on September 20, 2000.[1]

On April 28, 2005, a grand jury returned an eleven-count indictment against Naegele, alleging that he had made numerous misstatements on his bankruptcy forms and in the creditors' meeting. He was charged in three counts with testifying falsely under oath at the creditors' meeting (18 U.S.C. § 152(2)), in seven counts with making false declarations or statements under penalty of perjury in documents he used in connection with his bankruptcy proceeding (18 U.S.C. § 152(3)), and in one count with bankruptcy fraud (18 U.S.C. § 157). Before trial, the Court dismissed Counts 1, 2, 3 and 7 of the indictment -- all relating to alleged false statements made on the Statement of Financial Affairs filed in the Bankruptcy Court -- and Count 9, relating to false testimony under oath at the creditors' meeting. See United States v. Naegele, 341 B.R. 349 (D.D.C. 2006); United States v. Naegele, 367 B.R. 1 (D.D.C. 2007).

Naegele was tried before a jury on the remaining counts of the indictment – Counts 4, 5, 6, 8, 10 and 11 – beginning on September 19, 2007. On October 17, 2007, the jury returned a verdict of not guilty on Counts 4, 6, 10 and 11 of the indictment, and reported that they were unable to reach a unanimous verdict with respect to Counts 5 and 8 of the indictment. On October 18, 2007, after further deliberation, the jury reported that they were still unable to reach

---

[1] Several earlier written opinions have been issued by the undersigned in this criminal case, some of which set forth in greater detail the details of the bankruptcy process and the various forms a debtor must complete. See, e.g., United States v. Naegele, 367 B.R. 1, 3-4 (D.D.C. 2007).

2

a unanimous verdict on Counts 5 and 8 of the indictment.  The Court declared a mistrial as to those counts.

The defense orally moved for judgment of acquittal on all counts at the close of the government's case in chief on September 24, 2007.  After oral argument was presented, the Court reserved ruling as permitted under Rule 29(b) of the Federal Rules of Criminal Procedure.  The defense orally renewed its motion for judgment of acquittal at the close of its own case on October 12, 2007, and the Court again reserved ruling.  Out of an abundance of caution, the defense again renewed its motion for judgment of acquittal on October 24, 2007.  The parties briefed the motion, and the Court heard oral argument on December 20, 2007.[2]  For the reasons explained below, the Court will grant the motion and will order the entry of a judgment of acquittal on Counts 5 and 8 of the indictment.

## II.  DISCUSSION

### A.  Rule 29 Standard

Rule 29(a) of the Federal Rules of Criminal Procedures provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  FED. R. CRIM. P. 29(a).  "The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the

---

[2]   The papers submitted to the Court in connection with this motion include: Defendant's Renewal of his Motion for Acquittal ("Mot."); Defendant's Memorandum in Support of his Motion for Judgment of Acquittal ("Mem."); United States' Response in Opposition to Defense Motion for Judgment of Acquittal ("Opp."); and Defendant's Reply in Support of his Motion for Judgment of Acquittal ("Reply").

case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." FED. R. CRIM. P. 29(b). "If the jury has failed to return a verdict, the Court may enter a judgment of acquittal." FED R. CRIM. P. 29(c)(2).

In ruling on a motion for judgment of acquittal, the Court must "consider[] the evidence in the light most favorable to the government and determin[e] whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." United States v. Kayode, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (quoting United States v. Harrington, 108 F.3d 1460, 1464 (D.C. Cir. 1997)).  In so doing, the Court must "accord[] the government the benefit of all legitimate inferences." United States v. Weisz, 718 F.2d 413, 437 (D.C. Cir. 1983) (citations omitted).  The question is whether the evidence is sufficient for a rational juror to have found the defendant guilty.  See United States v. Kayode, 254 F.3d at 212-13;  United States v. Harrington, 108 F.3d at 1464.  Put another way, the Court may grant a motion for judgment of acquittal only when "a reasonable juror *must necessarily* have had a reasonable doubt as to the defendant[']s guilt." United States v. Weisz, 718 F.2d at 437 (emphasis in original) (citing United States v. Singleton, 702 F.2d 1159, 1162-63 (D.C. Cir.1983); United States v. Reese, 561 F.2d 894, 898 (D.C. Cir.1977); Curley v. United States, 160 F.2d 229, 232-33 (D.C. Cir.), cert. denied, 331 U.S. 837 (1947)).  "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the jury to make." United States v. Jemal, Criminal No. 05-0359, 2007 WL 778623, at *3 (D.D.C. March 12, 2007) (quoting United States v. Sutton, 801 F.2d 1346, 1358 (D.C. Cir. 1986) and Curley v. United States, 160 F.2d at 237).

*B. Counts 5 and 8*

Count 5 of the indictment charges Naegele with making a material false statement in violation of 18 U.S.C. § 152(3), alleging that on his Bankruptcy Schedule B he stated "[t]hat he had no contingent claims of any nature when, in truth and in fact as he then well knew, he had contingency fee agreements with clients of his law practice." Indictment ¶ 9.[3]

---

[3]     18 U.S.C. § 152(3) makes it a crime in relation to a pending bankruptcy proceeding for one to knowingly and fraudulently make a false declaration, certification, verification, or statement under penalty of perjury related to some material matter.  The jury in this case was instructed as follows:

> Counts 4, 5, and 6 of the Indictment charge violations of 18 U.S.C. § 152(3), namely that on or about May 4, 2000, in the District of Columbia, Defendant Timothy D. Naegele knowingly and fraudulently made false declarations in a bankruptcy proceeding, specifically, false declarations in his bankruptcy forms that he filed with the Bankruptcy Court.
>
> \* \* \*
>
> Count 5 alleges that Mr. Naegele falsely reported on Line 20 of Schedule B "that he had no contingent claims of any nature when, in truth and in fact as he then well knew, he had contingency fee agreements with clients of his law practice."
>
> \* \* \*
>
> The essential elements of this offense, each of which the Government must prove beyond a reasonable doubt, are:
>
> First:  That on or about the date charged, there was pending in the United States Bankruptcy Court for the District of Columbia, a bankruptcy case docketed as Case Number 00-0601, wherein Defendant Timothy D. Naegele was the Debtor;
>
> Second:  That the Defendant made a false declaration, certification, verification, or statement under penalty of perjury in relation to the bankruptcy proceeding;
>
> Third:  That the declaration, certification, verification, or statement under

Count 8 charges Naegele with making material false statements at the creditors' meeting in violation of 18 U.S.C. § 152(2), alleging that at the May 23, 2000 creditors' meeting, Naegele "[f]alsely testif[ied] under oath that he had listed all of his assets in his bankruptcy documents when, in truth and in fact as he then well knew, he had at least one asset that he had not listed, specifically, at least one contingent claim." Id. ¶ 11.[4]  The contingent claim to which

---

[4]  18 U.S.C. § 152(2) makes it a crime in relation to a pending bankruptcy proceeding for one to knowingly and fraudulently make a false oath or account related to some material matter.  The jury in this case was instructed as follows:

> Counts 8 and 10 of the Indictment charge violations of 18 U.S.C. **§** 152(2), namely that on or about May 23, 2000, in the District of Columbia, Defendant Timothy D. Naegele knowingly and fraudulently made false oaths and accounts during his testimony at the meeting of creditors.

> penalty of perjury related to some material matter;
>
> Fourth:  That Mr. Naegele knew that the declaration, certification, verification, or statement under penalty of  perjury was false when it was made; and
>
> Fifth:   That the Defendant made such declaration, certification, verification, or statement under penalty of perjury knowingly and fraudulently.
>
> When the words "under penalty of perjury" are used in these instructions, it means that the  Defendant made a written statement and signed and dated that statement as true under the penalty of perjury.
>
> *   *   *
>
> A declaration, certification, verification, or statement is false or fictitious if untrue when made and then known to be untrue by the person making it or causing it to be made.
>
> *   *   *
>
> An act is done "knowingly" if it is done voluntarily and intentionally, and not because of ignorance, mistake or accident.

this count related was a contingency fee arrangement Naegele had with his clients, Mr. and Mrs. Albers.

---

Count 8 alleges that Mr. Naegele falsely testified under oath at his creditors meeting "that he had listed all of his assets in his bankruptcy documents when, in truth and in fact as he then well knew, he had at least one asset that he had not listed, specifically, at least one contingent claim."

\* \* \*

The essential elements of this offense, each of which the Government must prove beyond a reasonable doubt, are:

> First: That on or about the date charged, there was pending in the United States Bankruptcy Court for the District of Columbia, a bankruptcy case docketed as Case Number 00-0601, wherein Defendant Timothy D. Naegele was the Debtor;
>
> Second: That the Defendant made a false oath or account in relation to the bankruptcy proceeding;
>
> Third: That the oath or account related to some material matter;
>
> Fourth: That Mr. Naegele knew the oath, declaration, and/or statement was false when it was made; and,
>
> Fifth: That the Defendant made such oath or account knowingly and fraudulently.

\* \* \*

An oath or account is false or fictitious if untrue when made and then known to be untrue by the person making it or causing it to be made.

\* \* \*

An act is done "knowingly" if it is done voluntarily and intentionally, and not because of ignorance, mistake or accident.

The language of Count 8 is broader than that of Count 5, in that it refers to "at least one contingent claim" and does not explicitly list what the contingent claim or claims are that the defendant is alleged to have omitted.  Count 5 charges the failure to list the contingency fee agreement on Schedule B, Line 20, and Count 8 charges the oral confirmation at his creditors' meeting that he had listed all of his assets on his schedules.  See Indictment.  As the defense exhaustively points out in its memorandum of law, however, the parties and the Court proceeded through extensive pretrial litigation and the trial itself on the basis that the false statement charged in Count 8 was the oral equivalent of the false statement charged in Count 5 – namely, the exclusion from the disclosures Naegele made during his bankruptcy of the defendant's contingency fee agreement with his clients, Mr. and Mrs. Albers.  See Mem. at 3 n.5, 4 n.7.

The Court need not answer the question here whether the government *could have* presented evidence of something else as the falsely omitted contingent claim under Count 8, because the government *did not* introduce evidence of any other contingent claims and expressly agreed on many occasions that it was the Albers' contingency fee agreement that was at issue in Count 8 – and that alone.  See, e.g., 10/15/07 (a.m.) Trial Tr. at 16:18-17:2 (government's closing argument) ("Count Eight, again, also relates to the contingency fee agreement.  That's his false answer, his lie during the meeting of creditors when Mr. Webster asks him . . . specifically, have you listed all of your assets and liabilities on your schedules, and Mr. Naegele says yes.  Yes I have.  That's what Count Eight is, it's his verbal lie at the meeting of creditors with respect to his failure to list the contingency fee agreement.").

*C. Sufficiency of the Evidence*

Defendant presents three arguments in his memorandum of law, one of which is that the evidence presented at trial was insufficient to sustain a jury verdict of guilty on Count 5 and on Count 8. That is the argument addressed by this Opinion. In addition, defendant reasserts his pretrial argument that the statements made were not false as a matter of law, see Mem. at 7-17, and presents an additional argument that defendant had no "fair warning" of any obligation to list the contingency fee agreement on Schedule B, Line 20. See Mem. at 17-21. A Rule 29 motion is not the proper vehicle through which to raise these legal arguments. Under the plain language of Rule 29, the only ground on which the Court may order the entry of a judgment of acquittal is "if the evidence is insufficient to sustain a conviction of such offense or offenses." FED. R. CRIM. P. 29(a).

Schedule B requires a debtor to list his personal property. Line 20 of Schedule B requires a debtor to list "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." The instructions on Schedule B at the time that Naegele (with the assistance of his bankruptcy counsel, Jeffrey Sherman) completed it provided:

> Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "X" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. . . . *Do not list interests in executory contracts and unexpired leases on this Schedule. List them in Schedule G – Executory Contracts and Unexpired Leases.* If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

9

Schedule B (emphasis provided).

In order to sustain a conviction on Count 5, the government has to have presented evidence sufficient for a reasonable jury to conclude beyond a reasonable doubt, among other things, that Naegele's answer on Line 20 of Schedule B – "None" – was false, and that instead he should have listed his contingency fee agreement with the Albers there. The defendant argues that "[o]n the threshold issue of falsity, the sole evidence that the government offered that the Albers' agreement should have been listed on Line 20 was Ms. [expert witness Tamara] Ogier's opinion that this is so." Mem. at 23. It is undisputed, as the defense notes, that Naegele's contingency fee agreement with the Albers was an executory contract, see Opp. at 2, and that the instructions at the top of Schedule B instruct debtors not to list "interests in executory contracts" on Schedule B. Defendant argues that Ms. Ogier's opinion testimony is "flatly inconsistent with the instruction on Schedule B" and that, if that's all there is, "[n]o rational juror could find it sufficient to conclude **beyond a reasonable doubt** that Mr. Naegele's answer on Line 20 was false, much less knowingly so." Mem. at 23-24 (emphasis in original).

The government responds:

> [T]he defense continues to argue that, as a matter of law, the Albers' fee agreement is *only* an executory contract, that the analysis of the contingent portion of the fee agreement need go no further, and that, therefore, Naegele did not have to disclose as property his contingent claim for attorneys fees which that fee agreement represented. The United States again urges the Court to reject this flawed reasoning because it runs counter to the definition of property under the Bankruptcy Code and disregards the *property interest* that an attorney holds in the client's cause of action in a contingency fee case.

Opp. at 2 (emphasis added).

From the testimony and argument at trial, and again from the government's opposition brief, it became clear what the government's theory of falsity is. As Ms. Ogier testified, and as the government continues to maintain, while the Albers fee agreement was indeed an executory contract, Naegele had an interest – a personal property interest – in the executory contract and in the Albers' cause of action because he had a right to attorneys' fees, albeit a contingent right, if the Albers were successful in their lawsuit. See, e.g., 9/21/07 (p.m.) Trial Tr. at 37:9-18 (Ogier testim.). The government argues that this interest is a contingent claim that is required to be disclosed on Line 20 of Schedule B because Schedule B requires the disclosure of "all personal property . . . of whatever kind." Schedule B; see Opp. at 2-3. The government fails in its brief to address the specific issue raised by the defense – that the instructions on Schedule B specifically instruct debtors not to list "interests in executory contracts" – whether they are property interests or some other kind of interest. The government presented evidence during its case-in-chief from Ms. Ogier that Naegele's interest in the Albers fee agreement was indeed an interest in an executory contract, but it never offered any evidence as to how a debtor could be convicted for failing to list an interest in an executory contract on Schedule B when the instructions specifically say not to.

Despite the government's argument to the contrary, the *only* evidence at trial that remotely supports its position is the testimony of Ms. Ogier. And what did she say? The government elicited testimony from Ms. Ogier during her direct examination that, in her opinion, "Mr. Naegele's right to receive fees in this case [of the Albers] should have been disclosed in Schedule B, Question 20." 9/21/07 (p.m.) Trial Tr. at 37:9-10 (Ogier testim.). Ms. Ogier continued: "Once you filled out Schedule A and Schedule B, Schedule A is the previous

schedule to the disclosed real property, like land, you should have disclosed everything you owned. Mr. Naegele had a right to receive money based on his representation of the Albers. It was contingent on them ultimately recovering something, so it was a contingent *interest*, which is exactly what Question 20 asks for." 9/21/07 (p.m.) Trial Tr. at 37:12-18 (Ogier testim.) (emphasis added).[5] The basis for this opinion seemed to be that every asset of a debtor must be either real property or personal property, and so everything must be listed either on Schedule A or on Schedule B.[6] But that premise – for which, a careful review of the transcript shows, Ogier had absolutely no basis other than her own unsupported statement – is inconsistent both with the instructions on Schedule B and the very existence of Schedule G. See 9/21/07 (p.m.) Trial Tr. at 36:17-39:9 (Ogier testim.). That can hardly be the basis for a criminal conviction.[7]

---

[5] The Court notes that Question 20 does not actually ask for "contingent interests" – rather, it asks for "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."

[6] At one point, Ms. Ogier even said: "I think it's very important that every asset – it's the law – that every asset be disclosed on Schedule B so that the trustee can do his job." 9/21/07 (p.m.) Trial Tr. at 43:23-44:1 (Ogier testim.).

[7] The contingency fee agreement with the Albers was not disclosed as an executory contract on Schedule G either. While it may be that it should have been included on Schedule G, the grand jury did not charge Naegele with a failure to include it there. Cf. United States v. Rowe, 144 F.3d 15, 23 (1st Cir. 1998).

As a separate point, the government also argues that the portion of an attorney-debtor's contingency fee that is earned pre-petition constitutes property of the bankruptcy estate. See Opp. at 4-5; see also id. at 8-9. That does not change the analysis set forth above. That something is property of the estate does not prove *where* on the bankruptcy forms it should be listed. That Naegele had a duty to disclose all potential assets of value, see Opp. at 5, similarly does not mandate that the asset at issue here be listed on Schedule B, Line 20 – and Naegele's failure to list it there is what the indictment specifically charges as the false statement in Count 5.

On cross examination, Ms. Ogier testified that "[a]n attorney representing a client is [sic] an executory contract. His right to fees is a *property interest*." 9/21/07 (p.m.) Trial Tr. at 41:10-11 (Ogier testim.) (emphasis added). Ms. Ogier then testified as follows:

> Q: My question is, you've testified before that a fee agreement that has both an hourly as well as a contingency fee component to it is an executory contract; do you recall?
>
> A: I don't recall exactly what I said, but I would agree with that with the addition that his right to fees is a property interest.
>
> Q: Right. But -- so we're in agreement that that is an executory contract in your view; is that right?
>
> A: Yes.
>
> Q: Okay. And what you've said is that his interest, that is to say, in the contingency portion, his interest should be disclosed on Schedule B; is that right?
>
> A: His right to fees, yes.
>
> Q: So his right to fees in the -- arising out of the fee agreement; is that right?
>
> A: Yes. His contract with the Albers.
>
> Q: Right. And it's not just any contract, it's an executory contract, right?
>
> A: Yes, but that doesn't mean the fee interest doesn't belong in Schedule B. It is an executory contract and he has a right to fees that should be disclosed to the trustee so the trustee can liquidate it for the benefit of creditors.
>
> Q: I'm just trying to make sure I'm understanding your view. Which is that his interest in the executory contract should be disclosed on Schedule B?
>
> A: Yes.

13

9/21/07 (p.m.) Trial Tr. at 41:12-42:13 (Ogier testim.).  The defense then repeatedly asked Ms. Ogier to explain the basis for her opinion that this particular interest in an executory contract should be listed on Schedule B, Line 20, when the Schedule B instructions direct that interests in executory contracts *not* be listed on Schedule B.  See 9/21/07 (p.m.) Trial Tr. at 43:11-48:11 (Ogier testim.).  Ms. Ogier had no articulable explanation for her opinion that this was so.  In fact, she testified that in her ten years of experience as a bankruptcy trustee in over 7500 bankruptcies, she had never seen a contingency fee agreement reported on Schedule B, and had never seen a government publication, court decision or treatise that states that a contingency fee agreement belongs on Schedule B.  See 9/21/07 (p.m.) Trial Tr. at 46:21-48:22 (Ogier testim.).  And there was absolutely no other evidence before the jury from which it could conclude that it was false not to include the interest in the contingency fee agreement on Line 20 of Schedule B.

Based on the evidence at trial, and giving the government the benefit of all legitimate inferences, the Court concludes that the evidence presented to the jury was insufficient to support a guilty verdict on Count 5, alleging that Naegele's answer to the question posed in Line 20 of Schedule B was false.  Any reasonable juror necessarily must have had a reasonable doubt of the defendant's guilt on Count 5.  See FED. R. CRIM. P. 29(a).  Because the government expressly limited its evidence and theory on Count 8 so that it was the oral equivalent of the charge in Count 5, see supra at 8, the government also has failed to present evidence sufficient to

sustain a conviction on Count 8.  Accordingly, the Court will order the entry of a judgment of acquittal on Counts 5 and 8 of the indictment.  A separate Order to this effect will be issued this same day.

```
                                        _____/s/_____
                                        PAUL L. FRIEDMAN
                                        United States District Judge
```

DATE:  February 27, 2008